Robert T. HUSTON, Plaintiff-Appellee,

v.

Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant-Appellant.

No. 86–1741.

United States Court of Appeals, Tenth Circuit.

Feb. 2, 1988.

Jeffrey C. Blair, Asst. Regional Counsel, Dept. of Health and Human Services (Richard A. Stacy, U.S. Atty., Toshiro Suyematsu, Asst. U.S. Atty., Ronald S. Luedemann, Chief Counsel, Region VIII, Dept. of Health and Human Services, and Thomas A. Nelson, Jr. Deputy Chief Counsel, Region VIII, Dept. of Health and Human Services, with him on the briefs), Denver, Colo., for defendant-appellant.

Caroyl J. Long (Robert T. Huston, with her on the brief), Cheyenne, Wyo., for plaintiff-appellee.

Before McKAY, ANDERSON and BALDOCK, Circuit Judges.

STEPHEN H. ANDERSON, Circuit Judge.

The claimant, Robert Huston, is an overweight sixty-one-year-old man with a bad back. He applied for Social Security disability insurance benefits in 1984, eight years after the date that his insured status expired. This eight year gap creates some difficulty and confusion, because while substantial evidence exists of the disabling character of the claimant's back problems at the time of his application for insurance benefits, the claimant's eligibility for continuing benefits since 1976 turns on the severity of his back problems in 1975–76, not in 1984.

The Administrative Law Judge ("ALJ") found that the claimant retained the residual functional capacity for light work from August 10, 1975, the alleged date of onset of his disability, through December 31, 1976, the date he last met the insured status requirements. The ALJ, therefore, held that the claimant was not entitled to disability insurance benefits under Title II of the Social Security Act. The federal district court reversed, finding that the record as a whole established substantial evidence of claimant's disability in 1975–76. Our review of the record convinces us that (1) the ALJ did not properly gauge the legal standards surrounding the role of pain in establishing a disability, failing to make findings as to the credibility of nonmedical pain testimony, and (2) the district court usurped the function of the ALJ by reweighing the evidence and making, in effect, its own determination of witness credibility. We reverse and remand to the Social Security Administration for findings as to whether testimony from the claimant and three other witnesses as to claimant's pain in 1975–76 was credible. If it was, then the combined medical and nonmedical evidence of both exertional and nonexertional pain was sufficient to preclude me-

chanical application of the Secretary's medical-vocational guidelines and would appear to dictate a finding of disability. If the nonmedical testimony was not credible, then on remand the reasons for such a finding should be specified.

## BACKGROUND

The claimant originally injured his back in Guam during World War II. In the late 1950s he became a farmer, an occupation he pursued until 1972. Off and on during this time, he suffered periods of acute back pain, as evidenced by various treatments by the Wheatland Medical Center in Wheatland, Wyoming and the McBride Clinic in Oklahoma City, Oklahoma. Medical records refer to disc surgery in 1962 or 1963 for degeneration of the lumbar spine. Throughout this period the claimant continued to operate his farm with help from his wife and children. In November 1970 he was hospitalized for severe pain and sciatica (nerve pain) of the right leg, accompanied by foot numbness and increased tenderness upon straight leg raising. After discharge indicating a "moderate recovery," R.Vol. II at 93, he again continued to operate his farm, apparently despite discomfort and with increasing assistance from family members.

In 1972, at the age of forty-six, the claimant sold his farm and bought a hardware store. At that time his treating physician at the McBride Clinic, Dr. Marvin K. Margo, wrote a "To–Whom–It–May–Concern" letter stating that the claimant had a "probable pseudoarthrosis" (formation of a false joint from failure of the discs to fuse properly) and that "any type of heavy work, especially on a farm and riding a tractor would be aggravating to [claimant's] back."[1] *Id.* at 97. In December 1975 the claimant was treated in the emergency room of the McBride Clinic for back strain that came from lifting a tire. Dr. Kenneth Gimple's medical entry at the time stated that although the claimant's disc

fusion had apparently resulted in a pseudoarthrosis, he "has had relatively little difficulty with his back except a chronic ache in cold weather." He found "no suggestion of sciatic pain down either leg." The recorded impression was "mild low back pain." *Id.* at 98, 99. With the exception of a brief record of a physical examination in July, 1976, there are no further medical reports until 1978—after the period of time in which the claimant must be found to be disabled in order to be eligible for insurance benefits.

Beginning in 1981 the medical reports show deterioration of claimant's back condition. In July 1982 Dr. R.E. Torkelson stated that while claimant had experienced back pain for a number of years, he "apparently did fairly well until a year ago when he developed gradual onset of increasing low back pain ..." *Id.* at 143, 197. Since 1981 the medical record demonstrates significant pain levels, repeated physical therapy treatments, increased medication levels, and use of a TNS unit. Recent physical therapy objectives consistently have been to try to keep the claimant functional.

Supplementing the limited medical record during 1975 and 1976, the claimant and three witnesses testified to the claimant's pain during that time. The claimant and his wife both testified that on many days he either stayed home from the hardware store because of pain or regularly sought respite for several hours on a hammock in the stockroom. In response to a question from the ALJ, the claimant's wife stated that by mid 1975, when her husband stopped working at the hardware store, "probably 90° [sic] of the time, he was in some degree of pain, and it was very seldom that he was free of some degree of pain." *Id.* at 49.

The claimant's brother testified that when he visited the claimant during the years he was operating the farm he found

---

**1.** The year before, in 1971, Dr. Margo had interpreted the claimant's back x-rays as revealing a "fairly good fusion of the LS [lumbosacral] joint although biplane x-rays were not made." R.Vol. II at 101. X-rays in 1975 showed no significant change from the 1971 x-rays. *Id.* The basis for Dr. Margo's 1972 statement that the claimant had a pseudoarthrosis is not specified in the record.

him unable to lift milk cans weighing approximately twenty pounds. During semi-annual visits in the years in which the claimant operated the hardware store the brother frequently found him experiencing pain. "[W]hen we were home I had to watch were [sic] I walked because I'd stumble over him in the night like going to the bathroom and things." *Id.* at 51. (The inference was that the claimant was crawling around because of the pain of standing up.) A friend testified to the claimant's long-standing pain, his dependence on his children and wife to help operate the farm, and his inability to load and unload items at his hardware store. *Id.* at 53–55.

The claimant himself testified to back and leg pain from operating the farm tractors. He said he learned over time that lying on a mattress on the floor of his home for extended periods of time could relieve bouts of back strain and negate the need for comparable periods of hospitalization. In response to a question from the ALJ as to whether he could work in a "lighter or more sedentary position," the claimant stated that at the time he quit the hardware store "[i]t was getting to the point, no sir." *Id.* at 43. He discussed the nature of his pain at that time by saying that he hurt the most in "[t]he small of my back and then radiating down my legs. Sometimes it would feel like the pain was shooting right out the bottom of my feet, my heel." *Id.* at 44. At the time he left the hardware business he was taking Darvon Compound 65, two aspirin, and a shot of whiskey to "knock the pain." *Id.* at 45.

### LEGAL ANALYSIS

 The primary question for resolution is whether the ALJ applied the correct legal standards regarding disabling pain. Pain can be a disabling condition under Title II of the Social Security Act. For conclusive evidence of disabling pain, however, the act requires:

"medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiologi-cal, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability."

42 U.S.C.A. § 423(d)(5)(A) (1987). While this provision is not a model of clarity, it suggests that pain testimony should be consistent with the degree of pain that could be reasonably expected from a determinable medical abnormality. A close reading of the provision reveals that the medical findings themselves need not establish or confirm the degree of pain alleged but that the medical impairment itself must be shown to exist and should be reasonably capable of producing the alleged pain level in some individuals.

This court has recently determined that the relationship between the impairment and the alleged pain need only be a loose one and that "if an impairment is reasonably expected to produce *some* pain, allegations of *disabling* pain emanating from that impairment are sufficiently consistent to require consideration of all relevant evidence." *Luna v. Bowen,* 834 F.2d 161, 164 (10th Cir.1987) (emphasis in original).

The ALJ apparently concluded that the claimant did not have disabling pain during 1975–76. He stated that he could "find no medically determinable impairment which would have prevented the claimant from performing light work." R.Vol. II at 10. Implicit in this statement is the ALJ's recognition that the claimant did have a medically determinable impairment sufficient to

preclude medium and heavy work.[2] Restating his findings he concluded that "[t]he claimant's allegations regarding his *current* pain and limitations were found credible but the findings regarding any disabling limitations prior to the date last insured were *absent.*" *Id.* at 11 (emphasis added). After so concluding, he mechanically applied the Secretary's medical-vocational guidelines (the "grids") to determine that jobs existed in the national economy which the claimant could perform. *See* 20 C.F.R. part 404, subpt. P, App. 2 (1987).

What is glaringly missing from the ALJ's decision is anything more than the most meagre consideration of the claimant's testimony as to his pain during 1975–76,[3] any consideration of the testimony of the other three witnesses, and any finding as to the credibility of that testimony, individually and collectively, for the years 1975–76. The ALJ's decision that he could find "no medically determinable impairment which would have prevented the claimant from performing light work" ignores the fact that the claimant had established the existence of a medically determinable back impairment that can cause and had caused pain. The law in this circuit provides that, where such is the case, a determination of no disability cannot be made without a full evaluation of all subjective and objective evidence of pain. *Luna,* 834 F.2d at 165.

■ While objective medical findings must be considered in evaluating pain, neither the regulations nor their interpretation in this circuit preclude consideration of subjective pain. In fact, we have consistently required the ALJ to consider assessments of subjective pain, at least where they have been made by treating physicians. *See Frey v. Bowen,* 816 F.2d 508, 515–16 (10th Cir.1987); *Teter v. Heckler,* 775 F.2d 1104, 1105 (10th Cir.1985); *Turner v. Heckler,* 754 F.2d 326, 330 (10th Cir.1985); *Nieto v. Heckler,* 750 F.2d 59, 61–62 (10th Cir.1984); *Byron v. Heckler,* 742 F.2d 1232, 1235 (10th Cir.1984); *Broadbent v. Harris,* 698 F.2d 407, 413 (10th Cir.1983); *Celebrezze v. Warren,* 339 F.2d 833, 838 (10th Cir.1964).

What distinguishes these earlier decisions from the present case is that in all of them the treating physicians themselves, based on medical test results and their own clinical impressions of the claimant's subjective pain, had opined that their patients were in severe pain or were disabled. In each case the claimant defeated attempts by the Social Security Administration to negate assessment of the claimant's subjective pain and to require medical substantiation of disabling pain on the basis of physiological data or medical test results alone.

■ Admittedly, the situation is somewhat different here. The clinical assessments of the treating physicians, the claimant's medical history, and diagnostic and laboratory test results do not establish the claimant's disability during 1975–76.[4] In effect, the claimant is trying to establish his disability on the basis of additional, nonmedical testimony—his own and that of his relatives and a friend. He is arguing that the medical records need not be viewed as inconsistent with the nonmedical testimony as to the severity of the pain and that, together, the nonmedical and medical

---

**2.** There is some ambiguity in the ALJ's opinion because in the findings section he states that "[d]uring the period in question, the claimant had the residual functional capacity to perform the physical exertion requirements of work except for work involving heavy lifting." R.Vol. II at 11. The ALJ, however, makes no attempt to rule that the claimant could perform work in the medium category, instead finding that the claimant had the RFC for light work.

**3.** The only comment as to claimant's pain testimony with respect to 1975–76 was that the claimant was experiencing pain in the small of his back which radiated to his legs and feet. R.Vol. II at 9.

**4.** Neither laboratory nor clinical findings indicate severe or long-standing pain sufficient to preclude light or sedentary work. The medical records do not suggest that the claimant was receiving frequent treatment for pain at the time, nor that he was using extensive or heavy medication to manage the pain. All the medical records show is a back injury and back surgery for disc degeneration, low back pain, intermittent flare-ups of severe pain sufficient to require medical attention, and a medical opinion that the claimant could not continue to do farm work.

evidence establish a disability. To establish disabling pain without the explicit confirmation of treating physicians may be difficult. Nonetheless, the claimant is entitled to have his nonmedical objective and subjective testimony of pain evaluated by the ALJ and weighed alongside the medical evidence. *See Luna,* 834 F.2d at 165. *See also Cotton v. Bowen,* 799 F.2d 1403, 1407 (9th Cir.1986); *Avery v. Secretary of Health and Human Servs.,* 797 F.2d 19, 21 (1st Cir.1986); *MacGregor v. Bowen,* 786 F.2d 1050, 1054 (11th Cir.1986); *Green v. Schweiker,* 749 F.2d 1066, 1070 (3d Cir. 1984). An ALJ may not ignore the evidence and make no findings.

■ While the ALJ's findings may be virtually absent with respect to the claimant's nonmedical evidence of pain, the record is not silent. The record contains evidence that the claimant's pain not only constituted an impairment sufficient to limit the claimant to light work but sufficient to preclude the claimant from any substantial gainful employment on a sustained basis. Although the medical evidence alone may be insufficient to establish the disabling character of the claimant's pain, if the nonmedical evidence of pain is credible, it will preclude the mechanical application of the grids and, in this situation, would seem to dictate a finding of disabling pain when combined with the medical evidence. If, on the other hand, the nonmedical evidence is contradicted by the medical evidence or is otherwise not credible, then the ALJ would have reason to apply the grids. He may not, however, neglect to make findings regarding credibility of the testimony pertaining to the years 1975–76.

■ Automatic application of the grids is appropriate only where a claimant's residual functional capacity (RFC) and other characteristics (age, work experience, education) precisely match a grid category. 20 C.F.R., part 404, subpt. P, App. 2, § 200.00 (1987). RFC is primarily a measure of exertional capacity, i.e., strength. Residual capacity, however, sometimes is curtailed by nonexertional limitations, such as postural or sensory limitations. Where such is the case, the grids may not be applied mechanically but may serve only as a framework to aid in the determination of whether sufficient jobs remain within a claimant's RFC range (sedentary, light, medium, heavy, and very heavy). *Id.* at § 200.00(e)(2). *See also Talbot v. Heckler,* 814 F.2d 1456 (10th Cir.1987); *Teter v. Heckler,* 775 F.2d 1104 (10th Cir.1985); *Turner v. Heckler,* 754 F.2d 326 (10th Cir. 1985); *Channel v. Heckler,* 747 F.2d 577 (10th Cir.1984).

In *Channel,* we acknowledged that pain could be a nonexertional impairment. *Id.* at 580. Although the boundaries between nonexertional pain and the pain experienced upon exertion or overexertion may be difficult to draw, it is important to recognize the distinction. Nonexertional pain perhaps can be characterized as pain that is present whether or not a claimant is exerting himself or herself in activities that relate to the strength requirements of the grid's RFC ranges (sedentary through very heavy). Under the regulatory framework, exertion appears to be measured primarily in terms of the strength requirements for such physical activities as walking, standing, lifting, carrying, pushing, pulling, reaching, and handling. *Cf.* 20 C.F.R. § 404.1545(b) (1987). Within such a framework, sitting and lying down would seem to be primarily nonexertional in character.[5] In the record before us, there is testimony stating that claimant experienced pain while lying down and while riding on (and feeling the vibrations of) a tractor, both essentially nonexertional activities. Although the pain is aggravated by strenu-

---

**5.** We express no view as to whether certain kinds of work in the sedentary and light categories could or should be considered primarily exertional in nature. We are of the view, however, that exertional pain can not be the equivalent of pain occurring upon any movement, even though any movement requires some exertion. The regulatory framework for the exertional demands of employment categories addresses the exertion required on a sustained basis to perform in a given work category. It is our view that this framework precludes from the exertional pain category the kind of pain, for instance, that is experienced upon shifting position or upon being passively moved.

ous activity and may originally have been caused by overexertion, the evidence suggests that it was present for claimant during 1975–76 when he was not exerting to any significant degree. The claimant's tenderness, numbness, and limited range of motion would also fall within the category of nonexertional impairments if they occurred during activities requiring little exertion.

Although the ALJ noted that the claimant believed he could still lift items weighing 15–20 pounds, the ALJ made no findings as to the credibility of the multiple testimony which indicated significant exertional and nonexertional pain during 1975–76. While the pain on exertion spoke to the claimant's difficulty lifting milk cans and hardware stock, the nonexertional pain spoke to his intermittent inability to leave the house or even function in a standing-up position. Even if the exertional pain may not have limited the claimant's ability to meet the lifting requirements of light work, the nonexertional pain certainly affected the claimant's sustained capacity for light work. Yet the ALJ applied the grids as if all pain factors were insignificant during 1975 and 1976. If the nonmedical testimony of nonexertional pain is credible, then substantial evidence would seem to exist that pain factors significantly limited the claimant's ability to perform a full range of light work jobs on a sustained basis.

 As the claimant observes correctly, once the claimant has made a prima facie showing of inability to return to past relevant work because of a severe medical impairment, the Secretary must shoulder the burden of proof to show that the claimant can perform other work on a sustained basis, given both exertional and nonexertional limitations. *Channel*, 747 F.2d at 579–81. The ALJ can not meet the Secretary's burden by saying that findings regarding limitations on the claimant's ability to perform the full range of light work

were absent; it is his job to make them. And if the ALJ meant that evidence was missing, then again it shows that he entirely neglected the testimony of the claimant and the other witnesses. The ALJ must give "full consideration" to "all relevant facts," before concluding that a claimant either is or is not disabled, and the ALJ may not meet the burden of proof by invoking the grids where they are not fully applicable. 20 C.F.R. pt. 404, subpt. P, App. 2, § 200.00(a) (1987). Here, if the testimony is credible for the years 1975–76, it would have been difficult for the claimant to perform a full range of light work because the testimony suggests that on any given day the claimant did not know whether he could get out of bed or leave the house. In other words, if the testimony is credible, then the claimant would seem to be eligible for disability insurance benefits.[6] On the other hand, if the testimony is not credible for those years and if the ALJ is able to sufficiently explain such a finding, then the grids could be invoked and a decision of no disability would be sustainable under the substantial evidence standard.

 Our decision here does not dictate any given outcome upon remand. It simply assures that the correct legal standards are invoked in reaching a decision based on the facts of this case. The ALJ can weigh and evaluate numerous factors in determining the credibility of pain testimony for the years in question. Some of the possible factors include: the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.[7] *See Luna*, 834 F.2d at 165–

6. If the claimant has the RFC for only sedentary work, then the applicable grid rule, 201.14 of Appendix 2, would dictate a determination that the claimant is disabled.

7. When weighed in combination, such factors can shed light on the determination of credibility. They are not exhaustive, however, but merely illustrative. Moreover, they work less well in

66. *See also Polaski v. Heckler,* 751 F.2d 943, 948 (8th Cir.1984), *vacated and remanded on other grounds,* 476 U.S. 1167, 106 S.Ct. 2885, 90 L.Ed.2d 974 (1986). Before finding that a claimant experiencing pain from a medically determinable impairment is not disabled, an ALJ must carefully consider all the relevant evidence, including subjective pain testimony, and expressly reflect that consideration in the findings. Findings as to credibility should be closely and affirmatively linked to substantial evidence [8] and not just a conclusion in the guise of findings.

We REVERSE and REMAND to the Social Security Administration for findings consistent with this opinion.

some situations than in others. For instance, some people find the side effects of pain medication to offset its benefits, others find little relief in pain medication, while others cannot afford certain prescription medications. Yet their pain can be disabling, nonetheless. Furthermore, supporting medical evidence need not be developed simultaneously with the onset of disabling pain in every case. Some who are disabled may not have been able to afford medical treatment or may have resisted medical help out of pride, fear, or other valid reasons. In some situations it will be enough if, at some point, objective medical evidence is developed that, in combination with nonmedical evidence, supports a finding of disability during the period at issue.

8. We read the recent case of *Campbell v. Bowen,* 822 F.2d 1518 (10th Cir.1987) as consistent with this view.