**Louie ROSS, Plaintiff,**

v.

**Shirley S. CHATER, Commissioner of Social Security, Defendant.**

**No. 95–4055–RDR.**

United States District Court, D. Kansas.

March 12, 1996.

George W. Swisher, Oskaloosa, KS, for Plaintiff.

Jackie A. Rapstine, Assistant U.S. Attorney, Topeka, KS, for Defendant.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is an action for review of a decision to deny applications for benefits under Title II and Title XVI of the Social Security Act. Review is requested under 42 U.S.C. § 405(g) and 5 U.S.C. § 706. Plaintiff has also requested a jury trial.

■ There is no right to a jury trial in this type of case. *Ginter v. Secretary of Dept. of H.E.W.,* 621 F.2d 313 (8th Cir.1980). Therefore, plaintiff's request for a jury trial shall be denied. Plaintiff's right to review is set out under § 405(g); it is unnecessary to consider review under the Administrative Procedure Act.

■ Under § 405(g), this court must decide whether the decision to deny benefits is supported by substantial evidence and whether the correct legal standards were applied. *Castellano v. Secretary of Health & Human Services,* 26 F.3d 1027, 1028 (10th Cir.1994). "Substantial evidence" is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.,* quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

Plaintiff has filed several applications for social security benefits. He was granted disability benefits for a period in 1976. After these benefits ended, he filed applications for benefits in 1985. These applications were denied. In 1990, he filed applications alleging a disability onset date of September 13, 1990. These applications were denied at the final level by an administrative law judge (ALJ) on May 28, 1992. This decision was not appealed.

On March 3, 1993, plaintiff filed the applications for Title II and Title XVI benefits which are at issue in this case. Again, plaintiff alleged a disability onset date of September 13, 1990.

■ The ALJ did not find good cause to reopen the decision of May 28, 1992 that plaintiff was not qualified for benefits. This court does not have jurisdiction to review the decision not to reopen. *Nelson v. Secretary of Health & Human Services,* 927 F.2d 1109,

1110–11 (10th Cir.1990); *Brown v. Sullivan,* 912 F.2d 1194, 1196 (10th Cir.1990). Accordingly, the decisions which this court must review are that defendant was not disabled on May 29, 1992 for the purposes of receiving Title II benefits and that defendant was not disabled on March 3, 1993 for the purposes of receiving Title XVI benefits.

These decisions were detailed in an opinion by the ALJ dated August 10, 1994. The ALJ found that plaintiff did not have an impairment or combination of impairments which prevented him from performing his past work as a security guard. Following a request for reconsideration and review of additional evidence, the decision of the ALJ was confirmed by the Appeals Council on February 9, 1995. This appeal followed.

The record indicates that defendant has had a bad back for many years. He had back surgery in the mid–1980s. One of the medical reasons he has listed to support his claim for disability benefits is degenerative disc disease. Defendant also alleges that he is functionally illiterate. This is another reason plaintiff lists in support of his claim for benefits.

■ The court believes substantial evidence supports the denial of benefits in this case. Plaintiff's treating physician, Dr. Moorhead, has made statements which contradict plaintiff's claim of disability. For instance, Dr. Moorhead has stated that: "Mr. Ross would be capable of doing some light activity" (Tr. 21); "[he] could carry 10 pounds an unlimited number of times" (Tr. 22); "no neurological problem prevents him from doing repetitive work with his hands" (Tr. 22); "he may have degenerative changes, but does not have anything which would render him disabled." (Tr. 26).

A consulting physician, Dr. John Chamberlin, noted that plaintiff complained that he could not sit or stand more than five to ten minutes without his legs giving out. (Tr. 620). However, plaintiff also reported that he shops for food, and cooks and cleans about the house. (Tr. 622). The doctor considered plaintiff to be "dramatic" during the evaluation and was surprised that plaintiff was able to dress himself in thirty seconds after the examination, considering the pain he complained of during the examination. (Tr. 621 & 623).

In the latest intelligence test taken by plaintiff, the results demonstrated that he is functioning in the average range of intelligence, although his nonverbal abilities are more greatly developed than his verbal abilities. (Tr. 642). The test suggested significant limitations in his verbal abilities which indicated there might be difficulty in training plaintiff to perform clerical work. (Tr. 644). We note that in a previous intelligence test, plaintiff was found to be of above average intelligence. (Tr. 384). Other statements in the record indicate that plaintiff is of average intelligence. (E.g., Tr. 478).

A vocational expert testified that plaintiff could return to a job as a security guard if he: could stand or walk for 6 hours out of an 8 hour day; could sit for 6 hours out of an eight hour day; lift or carry 10 pounds frequently and 20 pounds occasionally; could occasionally climb, balance, stoop, kneel, crouch and crawl; and had an IQ such as that shown by plaintiff's tests. (Tr. 697–98).

■ Plaintiff argues that his functional illiteracy prevents his employment as a security guard. However, substantial evidence supports a finding of literacy for the purposes of the social security regulations as well as a finding that plaintiff can work as a security guard.

The regulations only require the ability to read and write simple messages. 20 C.F.R. §§ 404.1564(b)(1) and 416.964(b)(1). The evidence indicates that plaintiff was able to read a booklet required to get a driver's license and pass the examination, although he was slow to accomplish it. The vocational expert's testimony indicated that plaintiff could be a security guard. Indeed, since plaintiff has already worked as a security guard, it appears that he is intellectually capable of doing the work. The test is not whether plaintiff will be hired for a job under the particular hiring practice of a security company, but whether he is physically and mentally capable of performing the job. 20 C.F.R. §§ 404.1505, 404.1566(a), 416.905 and 416.966(a). Finally, we note that plaintiff has completed several hours of vocational education, spent time in the military, and has

some college credit, although he asserts his wife did the written work in his college courses.

■ Plaintiff also relies upon his testimony and his wife's testimony regarding his chronic pain. The ALJ found that this testimony was not credible. In *Kepler v. Chater*, 68 F.3d 387, 390–91 (10th Cir.1995), the Tenth Circuit reviewed previous cases regarding the evaluation of pain testimony. The Circuit stated:

> " 'Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence.' *Diaz v. Secretary of Health & Human Services*, 898 F.2d 774, 777 (10th Cir.1990). However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.' *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir.1988) (footnote omitted)."

*Id.* at 391.

> "[When considering claims of disabling pain, the ALJ should] 'consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.' *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)."

*Id.* at 390.

■ Factors which the ALJ should consider in determining whether a claimant's pain is in fact disabling include:

> "The levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence."

*Id.* at 391 (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1489 (10th Cir.1993).

■ We believe substantial evidence supports the credibility determinations of the ALJ. Plaintiff complained of painful headaches twice a day in the hearing before the ALJ. However, these complaints are not mentioned in his treating physician's notes. Although he has complained of numbness and dropping things, his treating physician has not found a good explanation for these symptoms. Dr. Chamberlin also found no atrophy and found normal dexterity during his examination of plaintiff.

Plaintiff stated that he had several injuries to his right leg. However, these injuries are not documented in the record. Plaintiff stated that he could do very little around the house. But, he estimated that he operated a push lawn mower for 15 or 20 minutes at a time. This indicates a capacity to work around the house.

In discounting the credibility of plaintiff and his wife, the ALJ noted some of these discrepancies as well as others, particularly in the area of plaintiff's education and intellectual abilities. He further explained that plaintiff's claimed limitations were not supported by restrictions placed upon him by physicians or by physical findings produced by his doctors' examinations. He also found some inconsistencies between plaintiff's written descriptions of his activities (e.g., Exhibit E18) and his oral testimony. The ALJ noted the skepticism of Dr. Chamberlin and Dr. Moorhead as they weighed plaintiff's complaints of pain and disability. He considered the medication which plaintiff has been taking (aspirin and one amitriptyline per day) and noted that this medicine had no adverse effect upon plaintiff's activity. The ALJ also emphasized the absence of doctor's visits between early 1994 and ten days after the hearing date (June 10, 1994). Finally, the ALJ did not credit plaintiff's wife's testimony because of her financial interest in the proceedings and her reliance upon the plaintiff for information.

After thoroughly reviewing the record, the court believes the ALJ properly analyzed plaintiff's complaints of pain and that his credibility determinations are supported by substantial evidence. Substantial evidence also supports the finding that plaintiff could

return to his prior work as a security guard. The correct legal standards have been applied by the ALJ. Accordingly, the court shall affirm the denial of benefits in this case.

**IT IS SO ORDERED.**