**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 10 1997**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

GLENDA G. KNIGHT,

Plaintiff-Appellant,

v.

KENNETH S. APFEL, Commissioner,
Social Security Administration,

Defendant-Appellee.

No. 97-7037
(D.C. No. CV-96-18-S)
(E.D. Okla.)

ORDER AND JUDGMENT[*]

Before BALDOCK, BARRETT, and MURPHY, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

---

[*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Claimant Glenda Knight appeals from the district court's order affirming the Commissioner's decision denying her application for disability benefits and supplemental security income. Claimant alleged disability from July 1992 due to a back injury, pain in her knees and foot, carpal tunnel syndrome, and hypertension. In a decision which became the final decision of the Secretary, the administrative law judge (ALJ) concluded that claimant had severe impairments, but that her condition did not meet or equal the criteria of the listings in Appendix 1, Subpart P, Regulations No. 4. Determining claimant not disabled at step four of the five-step sequential process, see Williams v. Bowen, 844 F.2d 748, 750-52 (10th Cir. 1988), the ALJ concluded that claimant could return to her past relevant work as a department manager, cashier, and sales clerk for Wal-Mart, or as a home provider.

On appeal, claimant asserts that (1) the ALJ erred in determining that claimant could return to her past relevant work without making the appropriate findings; (2) the ALJ failed to give the proper consideration and weight to the opinions of claimant's treating physicians; and (3) the ALJ's credibility determination was not based on substantial evidence.

We have jurisdiction over this appeal pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. § 1291. We review the Secretary's decision to determine whether her factual findings are supported by substantial evidence in the record viewed as a

whole and whether she applied the correct legal standards. See Andrade v. Secretary of Health & Human Servs., 985 F.2d 1045, 1047 (10th Cir. 1993). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1028 (10th Cir. 1994) (citations and quotation omitted). "In addition to a lack of substantial evidence, the Secretary's failure to apply the correct legal standards, or to show us that she has done so, are also grounds for reversal." Winfrey v. Chater, 92 F.3d 1017, 1019 (10th Cir. 1996). Because we agree that the ALJ failed to make the necessary findings regarding the requirements of claimant's past relevant work, and in addition, failed to give the proper weight and consideration to the opinions of claimant's treating physicians, we reverse and remand for further proceedings.

When determining disability at step four of the sequential analysis, the ALJ must first assess claimant's residual functional capacity (RFC) and then determine whether claimant can perform her past relevant work in light of the limitations found. See id. at 1023-25 (discussing the three phases of step four in detail). Here, the ALJ determined that claimant could stand and/or walk and/or sit six hours in an eight-hour work day, lift twenty pounds occasionally and ten pounds frequently, and occasionally stoop, squat, kneel, crouch, and crawl. See Appellant's App. Vol. II at 17.

At the second phase of the step-four analysis, the ALJ must develop the record with "'factual information'" regarding the actual work demands of the claimant's past relevant work, and whether, given the claimant's physical and/or mental limitations, the claimant can meet those demands. See Winfrey, 92 F.3d at 1024 (quoting SSR 82-62, Soc. Sec. Rep. Serv. Rulings 1975-1982, at 812). Here, the ALJ merely stated that the work activities of claimant's past relevant work were not precluded by the limitations stated. The ALJ made no findings regarding the actual work-activity demands of claimant's past relevant work and how claimant's impairments would relate to those demands. Because we cannot reweigh the evidence, see Castellano, 26 F.3d at 1028, or make factual determinations on behalf of the ALJ, and because the ALJ's lack of specific findings here leaves us nothing to review, see Winfrey, 92 F.3d at 1025, we must reverse and remand for further proceedings.

Having determined the need for a remand, we now consider claimant's challenges to the first phase of the step-four analysis, determination of claimant's RFC, and whether further correction on remand is needed. Claimant alleges that the ALJ failed to consider or give the proper weight to the opinions of her treating physicians. We agree.

In June 1979, claimant had surgical repairs of the bilateral chronic subluxating patellae of both knees by Dr. George W. Carlson, an orthopedic

surgeon. When as late as 1986, claimant continued to have pain in her right knee, Dr. Carlson determined that a joint replacement would be the only effective treatment available.

In July 1992, claimant sustained a back injury in a work-related accident at Wal-Mart. Dr. Carlson diagnosed a herniated disc at L5-S1. At the recommendation of Dr. Nathan Bradley, a consultative orthopedic surgeon, claimant decided against surgery and entered a work hardening program in Tulsa in February 1993. In her report, the physical therapist in Tulsa stated that claimant had attempted to relieve her pain through physical therapy, exercises, electrical stimulation, and a TENS unit, all without success. She reported that although claimant had a prescription for Darvocet, it did not help much. She had also tried muscle relaxers, but gave up due to stomach irritation. Relying on an intake interview, a job analysis, and a series of performance tests, the physical therapist suggested work hardening with the goal that claimant could return to work for Wal-Mart, but in a different position "since her previous job as Department Manager required a lot of lifting, carrying, pushing and pulling." Appellant's App. Vol. II at 146.

Following her return from two weeks of work hardening in Tulsa, claimant experienced a failed work attempt, and finally, on September 30, 1993, when she had not significantly improved, Dr. Bradley performed a L5-S1 laminotomy and

diskectomy, left, and a L5-S1 TSRH instrumentation and fusion on claimant's back. Because claimant's continuing knee problems were exacerbated by her back rehabilitation regime, in February 1994, Dr. Bradley reported that claimant was limited in her ability to work and remained temporarily totally disabled. He referred her to Dr. David A. Flesher for evaluation and treatment of her knees.

Dr. Flesher agreed that claimant's back rehabilitation program was aggravating her knees. He concluded that claimant had "patellofemoral arthritis of longstanding," and absent a patellectomy in the event her symptoms worsened, there was no surgical solution to her knee pain. Id. at 210. He also opined that a patellectomy "would probably aggravate her spine problem at the present time." Id. Dr. Flesher recommended medication and a change in her back rehabilitation program.

In March 1994, claimant was evaluated by Dr. John W. Ellis for continued pain in her right foot, the result of a stress fracture which had been treated by Dr. Carlson in 1991. Dr. Ellis opined that claimant would need treatment for early arthritis and swelling in the foot and suggested she not do a job where prolonged standing or a lot of walking are required. He computed an eighteen percent total permanent partial impairment as a result of claimant's right foot problem.

In April 1994, plaintiff was diagnosed by Dr. James P. Metcalf with carpal tunnel syndrome in both hands and wrists. He recommended a complete workup on her hands and opined that she was temporarily totally disabled. Claimant's surgery on her right hand, performed on September 12, 1994, by Dr. Carlos A. Garcia-Moral, was successful in that claimant experienced a lessening of the symptoms. At the time of the ALJ's decision, she was awaiting surgery on the left hand.

In April 1994, Dr. Bradley reported that claimant's back problem was still not improving. In an October 27, 1994 letter to claimant's attorney, Dr. Bradley stated that claimant was "markedly limited in activity in that she can sit, stand, or walk for only about thirty minutes at a time and requires frequent changes of position to allow her to get along with her pain." Id. at 233. He concluded that her back and leg pain in combination with her hand pain and numbness and her knee problems render her "significantly disabled." Id. He further opined that claimant "is not a candidate to be gainfully employed at this time and has not been since September 1992." Id. He expressed uncertainty as to when and if claimant would be able to return to work.

In determining that claimant was not disabled and capable of returning to her past relevant work, the ALJ stated that "the evidence here shows that there would be no reason she could not return to the kind of work she had done in the

past doing sales clerk work, cashier's work, department manager or doing clerical light duties." Id. at 17. As the recitation of the medical evidence above establishes, this statement completely disregards the opinions of her treating physicians. The ALJ states that "claimant does take some pain medication which appears to control her pain," and "noted that [claimant] has had treatment other than medication for the relief of pain all of which are shown by the records as being successful." Id. He does not, however, support these statements with any medical evidence in the record. In fact, the record establishes that claimant had tried numerous approaches to attempt to control her pain, including a TENS unit, all without success.

The ALJ did not mention or discuss Dr. Flesher's opinion regarding the severity of claimant's knee impairment, or Dr. Ellis' opinion that the arthritis in claimant's foot precluded her from doing a job requiring prolonged standing or a lot of walking. In discussing claimant's carpal tunnel syndrome, the ALJ stated that "no EMG or nerve conduction studies had been performed." Id. at 15. This statement is included in a two-page August 4, 1994 report of Dr. Garcia-Moral in which he recommended that these studies be performed. A September 6, 1994 report in which Dr. Garcia-Moral stated that the results of the "EMG and nerve conduction velocity studies" showed "changes that were consistent with carpal tunnel syndrome," id. at 221, was not mentioned or discussed by the ALJ.

-8-

The ALJ is required to "evaluate every medical opinion" he receives, 20 C.F.R. § 404.1527(d), and to "consider all relevant medical evidence of record in reaching a conclusion as to disability," Baker v. Bowen, 886 F.2d 289, 291 (10th Cir. 1989). A treating physician's opinion about the nature and severity of a claimant's impairment will be given controlling weight if it is supported by clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); Castellano, 26 F.3d at 1029.. Anything less is error which this court has censured on numerous occasions. See e.g., Goatcher v. United States Dep't of Health & Human Servs., 52 F.3d 288, 289-90 (10th Cir. 1995); Frey v. Bowen, 816 F.2d 508, 513-15 (10th Cir. 1987).

The glaring omission in the ALJ's decision is any discussion of the opinion of Dr. Bradley, claimant's orthopedic surgeon. Dr. Bradley had been treating claimant since shortly after her back injury in 1992. He is a specialist in the area in which he was rendering his opinion, and his opinion is consistent with every other physician either treating or examining claimant, and is consistent with claimant's reports of her symptoms.[1]

---

[1]     At this point we note that apparently at the request of the Secretary, claimant was examined by Dr. M. Young Stokes, III, who rendered an opinion included in the record. Any mention of this opinion is also absent from the ALJ's decision.

Accordingly, the ALJ's disregard of the opinions of claimant's treating physicians is a legal error which must be corrected on remand. In addition, we note that the ALJ's disregard of the medical evidence in this case also affected his evaluation of claimant's credibility regarding her subjective complaints of pain, see Winfrey, 92 F.3d at 1021. This will also require reevaluation upon remand. Upon remand we do not dictate any result. Our remand "simply assures that the correct legal standards are invoked in reaching a decision based on the facts of this case." Huston v. Bowen, 838 F.2d 1125, 1132 (10th Cir. 1988).

REVERSED and REMANDED to the district court with directions to remand the case to the agency for further proceedings consistent with this order and judgment.

Entered for the Court


Bobby R. Baldock
Circuit Judge