**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 14 1999**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

SHARON F. COX,

   Plaintiff-Appellant,

v.

KENNETH S. APFEL, Commissioner,
Social Security Administration,

   Defendant-Appellee.

No. 98-5203
(D.C. No. 97-CV-544-J)
(N.D. Okla.)

ORDER AND JUDGMENT  *

Before **BALDOCK** , **BARRETT** , and **McKAY,** Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

 *  This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Plaintiff appeals from an order of the magistrate judge, sitting for the district court by consent of the parties pursuant to 28 U.S.C. § 636(c), affirming the decision of the Commissioner of Social Security that she is not disabled within the meaning of the Social Security Act and denying her claim for supplemental security income and disability insurance benefits. We review the Commissioner's decision to ascertain whether it is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Castellano v. Secretary of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir.1994). We have jurisdiction pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, and we reverse and remand for further proceedings.

## I. Background

Plaintiff was born in 1956 and has an eleventh grade education. In May 1990, she was severely injured when her hair was caught in a machine at work. A piece of her scalp was torn away, she suffered severe injuries to her forehead, a vertebra in her neck was fractured, and her neck, back and shoulder muscles were severely strained. She went through lengthy rehabilitation and was not released to return to work until February 1992. Shortly after she went back to work, however, she began suffering from severe gastrointestinal problems. She was diagnosed with a "giant" duodenal ulcer in her stomach, *see* Appellant's App.,

Vol. II at 402, 404, which ultimately required surgery to remove one-third of her

stomach.  After this surgery, she was diagnosed with a post-operative

gastrointestinal disorder known as "dumping syndrome," from which she suffers

chronic stomach cramping and diarrhea as well as chronic headaches and fatigue.[1]

Plaintiff struck her head on a steel bar in January 1994, and began to suffer

nausea and blurred vision.  In October 1994, plaintiff was examined by a

consulting physician, Dr. Dalessandro, upon referral of the Commissioner.  In

addition to noting plaintiff's numerous medical impairments, Dr. Dalessandro

diagnosed plaintiff with depression.

Plaintiff applied for benefits in 1994, alleging she had been disabled since

March 1994 due to depression, ulcers, dumping syndrome, back and neck pain and

headaches.  *See id.* at 33-35, 62-63, 77-78.  After her application was denied

initially and on reconsideration, plaintiff sought and received a de novo hearing

before an administrative law judge (ALJ).  Following the hearing, the ALJ denied

plaintiff's claim at step five of the evaluation sequence.  *See generally Williams*

*v. Bowen* , 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five-step process).

The ALJ found that, while plaintiff could not perform her past relevant work as

---

[1]      Dumping syndrome "occurs after eating," and is "characterized by flushing,
sweating, dizziness, weakness, and vasomotor collapse, occasionally with pain
and headache; result[ing] from rapid passage of large amounts of food into the
small intestine."  Stedman's Medical Dictionary, at 1728 (26th ed.1995).

an industrial assembly worker, cashier, electronics factory worker or seismograph equipment operator, she retained the residual functional capacity (RFC) to perform the full range of sedentary work, with a limitation that she could not do jobs that required the use of her arms overhead. The ALJ concluded that plaintiff could perform other jobs that existed in significant numbers in the national economy. The Appeals Council affirmed the ALJ's decision and it became the Commissioner's final decision. Thereafter, plaintiff filed a complaint in district court. The magistrate judge affirmed the Commissioner's denial, and plaintiff's appeal to this court followed.

## II. Evidence of Depression

Plaintiff first contends that the ALJ failed to consider properly the evidence in the record that she suffered from depression when he failed to mention this evidence in his decision and failed to prepare a Psychiatric Review Technique (PRT) form. We agree.

A claimant is responsible for furnishing medical evidence of claimed impairments, *see* 20 C.F.R. §§ 404.1512(a), (c), 416.912(a), (c) but the Commissioner also has the duty to ensure that an adequate record is developed relevant to the issues raised, *see Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). The ALJ is required to "evaluate every medical opinion" he receives, 20 C.F.R. §§ 404.1527(d), 416.927(d), and to "consider all relevant medical

evidence of record in reaching a conclusion as to disability," *Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989). Although he is not required to discuss every piece of evidence, the ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (citations omitted).

Furthermore, when a claimant for disability benefits or supplemental security income presents evidence of a mental impairment that allegedly prevents her from working, the ALJ must follow the procedures for evaluating mental impairments set forth in 20 C.F.R. §§ 404.1520a and 416.920a, including the preparation of a PRT form, which the ALJ must attach to his written decision. *See Cruse v. United States Dep't of Health & Human Servs.*, 49 F.3d 614, 617 (10th Cir. 1995); *Andrade v. Secretary of Health & Human Servs.*, 985 F.2d 1045, 1048-49 (10th Cir. 1993). The failure to do so is reversible error. *See Hill v. Sullivan*, 924 F.2d 972, 974-5 (10th Cir. 1991).

In this case, plaintiff indicated that she suffered from depression during her application process; indeed, the Commissioner characterized her *primary* diagnosis as her mood disorder. *See* Appellant's App., Vol. II at 77-78, 62. Plaintiff stated that her "depression [was] worse" in her request for an administrative hearing. *See id*. at 115. Plaintiff also stated that she does not get dressed when she is depressed in response to a question about how her illness

affects her ability to care for her personal needs. *See id.* at 113. At the administrative hearing, plaintiff testified that she does not have any hobbies because she is too depressed. *See id*. at 46. Dr. Dalessandro, a physician who examined plaintiff at the request of the Commissioner, diagnosed plaintiff with depression, noting that she had chronic fatigue and difficulty sleeping, that her affect was flat and her mood was depressed, and that she was observed crying. *See id.* at 193-95. Plaintiff's application was reviewed by a psychologist for the Commissioner, Dr. Carolyn Goodrich, who also concluded that plaintiff had depression, though finding that her mental impairment resulted only in slight functional limitations. *See id*. at 66-67.

The evidence in the record was sufficient to trigger the ALJ's duty to develop the record concerning plaintiff's depression and to follow the procedures set forth in 20 C.F.R. §§ 404.1520a and 416.920a. *See Carter v. Chater*, 73 F.3d 1019, 1021-22 (10th Cir. 1996) (ALJ had duty to develop record where mental health professional had diagnosed claimant as suffering from mental impairment); *Hill*, 924 F.2d at 974 (same). Nevertheless, the ALJ made no mention of any of the uncontroverted evidence that plaintiff suffered from depression, and did not mention, discuss, or weigh Drs. Dalessandro's and Goodrich's findings or

opinions with respect to plaintiff's depression. [2] The ALJ also failed to follow the special procedures for evaluating mental impairments, including a failure to complete a PRT form.

In light of the evidence in the record indicating that a mental impairment exists, the ALJ's failure to develop the record and to follow the special procedures for mental impairments required by the regulations constitute errors warranting reversal. As a reviewing court, we cannot make factual determinations on the ALJ's behalf. *See Rapp v. United States Dep't of Treasury*, 52 F.3d 1510, 1515 (10th Cir. 1995) (reviewing court may not compensate for deficiencies in an agency's decision "by supplying a reasoned basis for the agency's action that the agency itself has not given."); *see also Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991) (appellate court may "neither reweigh the evidence nor substitute our judgment for that of the agency").

---

[2] The ALJ recited a general disclaimer that he had reviewed all of the medical evidence except those exhibits omitted because they "relate to a time not covered by the claim, illegibility, duplicity, different physicians reporting the same diagnoses, physician duplication of hospitalization records, failure to state a diagnosis, statement of the claimant's complaints without a diagnosis, prescription of medication only, etc." Appellant's App. Vol. II at 16-17. We bring to the ALJ's attention that a general disclaimer is not a substitute for the ALJ's obligation to give careful consideration to all the relevant evidence and to expressly link his findings to specific evidence. *See Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988).

Plaintiff also contends that the ALJ disregarded his duty to fully and fairly develop the record by not ordering a consultative mental examination to assess the severity of her depression. Because we are remanding for the ALJ consider plaintiff's alleged mental impairment in the first instance, we do not address whether a consultative examination is required. On remand, the ALJ must determine whether to obtain a consultative examination. *See Hawkins*, 113 F.3d at 1167 (10th Cir. 1997) (holding that ALJ should order consultative examination if the claimant has shown "a reasonable possibility that a severe impairment exists" and the examination would be "necessary or helpful to resolve the issue of impairment.")

### III. Credibility Assessment

Plaintiff next contends that the ALJ's assessment of the credibility of her subjective complaints was not supported by substantial evidence. We agree.

The ALJ concluded that plaintiff could perform a full range of sedentary work, limited only by an inability to lift her arms overhead. In reaching this conclusion, the ALJ stated that plaintiff's reported daily activities were consistent with sedentary work. *See* Appellant's App., Vol. II at 18. Plaintiff testified to very limited daily activities, which do not appear consistent with the ALJ's RFC determination. Among other limitations, plaintiff testified that after she eats or if she gets nervous or stressed, she suffers from stomach cramps for thirty minutes as

a result of her post-operative dumping syndrome, and, if the medicine she takes prior to each meal is not effective, she gets diarrhea. *See id*. at 33-34. She testified she gets diarrhea two to three times a week. *See id*. at 35. She also testified that she cannot sit for more than fifteen to thirty minutes at a time, cannot stand for more than fifteen minutes at a time, and that she takes a thirty-minute nap every day. *See id*. at 39-40, 45. The ALJ did not mention any of these limitations or cite to any specific evidence in making his determination that plaintiff's daily activities were consistent with sedentary work.

The VE testified that, if plaintiff's testimony was accepted as credible, she would not be able to do any work on a sustained basis because she would be unable to work eight hours a day, five days a week with her cramping and frequent diarrhea, nor would there be jobs that would allow her to take a nap or to move about from a sitting and standing position as often as she required. *See id*. at 51-52. "In order to engage in gainful activity, a person must be capable of performing on a reasonably regular basis." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984); *see also* S.S.R. 96-8P, 1996 WL 374184, at *2 (requiring the Commissioner to show that claimant can perform work on a sustained or regular and continuing basis, meaning eight hours a day for five days a week, or an equivalent work schedule).

It appears that the ALJ discredited plaintiff's testimony concerning the effect of her dumping syndrome based on his conclusion that "the more recent medical evidence does not show that the [plaintiff] was seeking help for diarrhea . . . [and] she was not receiving continuing treatment for her gastrointestinal problems. . . ." *Id*. at 18. The ALJ did not specify what evidence he relied upon to support this conclusion. *See* SSR 96-8p, 1996 WL 374184, *7 ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing *specific* medical facts . . . and nonmedical evidence . . . .") (emphasis added). We are unable to find evidence in the record to support the ALJ's finding. The record shows numerous diagnoses of dumping syndrome, and chronic diarrhea and stomach cramping. In 1995, the year of plaintiff's administrative hearing, the medical evidence in the record shows that plaintiff sought medical treatment and was prescribed numerous medications for her gastrointestinal disorders throughout the year. *See* Appellant's App. at 481-85. She was hospitalized in February 1995 for dehydration and weakness due to her chronic diarrhea, *see id.* at 485, and prescription medications for her gastrointestinal disorders were renewed as recently as two months prior to the hearing, *see id*. at 482.

The ALJ's conclusion that plaintiff was not seeking medical treatment for her dumping syndrome and related gastrointestinal disorders is not supported by

substantial record evidence, and thus, cannot provide a proper basis to discount plaintiff's subjective allegations of disabling nonexertional limitations or to conclude that plaintiff can perform a full range of sedentary work on a sustained basis. Accordingly, we must remand this cause for further proceedings. *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (holding that ALJ must closely and affirmatively link credibility findings to substantial evidence)

The judgment of the United States District Court for the Northern District of Oklahoma is REVERSED, and the case is REMANDED with instructions to remand the case to the Commissioner for further proceedings in accordance with this order and judgment.

Entered for the Court

Bobby R. Baldock
Circuit Judge