**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 21 2002**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

DEBORAH G. O'NEAL,

      Plaintiff-Appellant,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security
Administration, *

      Defendant-Appellee.

No. 01-6200
(D.C. No. 00-CV-152-L)
(W.D. Okla.)

---

**ORDER AND JUDGMENT** **

---

Before **LUCERO** , **PORFILIO** , and **ANDERSON** , Circuit Judges.

---

\*     On November 9, 2001, JoAnne B. Barnhart became Commissioner of Social Security. In accordance with Rule 43(c)(2) of the Federal Rules of Appellate Procedure, Ms. Barnhart is substituted for Larry G. Massanari as the appellee in this action.

\*\*     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The Court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Appellant Deborah O'Neal challenges the decision of the district court affirming the conclusion of the Commissioner of Social Security that she is not entitled to disability benefits. We have jurisdiction under 42 U.S.C. § 405(g) and 28 U.S.C. § 1291, and we reverse and remand to the district court.

**I**

O'Neal's left leg was injured in a car accident in November 1993. In April 1994, she underwent surgery. As an unintended consequence of the surgery, O'Neal's sympathetic nervous system was traumatized, and she developed a condition known as reflex sympathetic dystrophy (RSD). RSD is characterized by a constant pain cycle. O'Neal, who was employed as a salesperson before her accident, has not worked since the surgery.

O'Neal underwent extensive physical therapy following the surgery. She received a series of spinal blocks, which succeeded in abating her pain only for a day to a day-and-a-half. An epidural catheter was attempted, but it failed. O'Neal participated in a specialized program for RSD patients, which met five days a week, eight hours a day for two-and-a-half months. Among other things, the RSD program focused on teaching patients how to manage pain through mental techniques. O'Neal had limited success in this program.

As a result of her condition, O'Neal takes pain medication (Fioricet with Codeine) on a daily basis; takes muscle relaxants and other medications on a

regular basis; and is in contact with her family physician on a weekly basis regarding maintenance of her medications.

O'Neal applied for disability benefits, and her application was denied. She requested a hearing before an administrative law judge (ALJ), which was held August 27, 1997. At the hearing, O'Neal testified about her condition and the limitations it placed on her daily activities. Notwithstanding this evidence, the ALJ concluded that O'Neal did not suffer from a disability. The Appeals Council declined to hear her appeal, at which point the ALJ's decision became the final decision of the Commissioner. Thereafter, the district court affirmed the Commissioner's denial of benefits on the report and recommendation of the magistrate judge.

## II

O'Neal argues that the ALJ failed to give due consideration to her allegations of disabling pain. We review the Commissioner's decision to determine whether it is supported by substantial evidence and whether the correct legal standards were applied. Hill v. Sullivan, 924 F.2d 972, 973 (10th Cir. 1991). Substantial evidence is adequate relevant evidence that a reasonable mind might accept to support a conclusion. Hargis v. Sullivan, 945 F.2d 1482, 1486 (10th Cir. 1991).

The five-step analysis for determining disability in the social security context is familiar. Relevant here is step five, at which the burden shifts to the Commissioner to prove that the claimant can perform jobs existing in the national economy. Flint v. Sullivan, 951 F.2d 264, 267 (10th Cir. 1991). O'Neal contends she could not perform other work because of the severity of her RSD symptoms.

At the hearing, O'Neal testified about her multiple spinal blocks, the attempt to insert an epidural catheter, her participation in the specialized RSD program, her extensive physical therapy, and her continued daily use of pain medications. [1] This testimony is supported by medical reports in the record. Further, O'Neal's primary complaints of pain, swelling, muscle spasms, and hypersensitivity in her left leg are all mirrored in her physicians' observations over the course of several years.

O'Neal further testified that the increased pain in response to cold and damp weather means she sometimes does not get out of bed at all during the winter, and rarely leaves the house in that season. Regarding her typical activities, she stated that she drives very short distances only; that her daughter does the majority of the housecleaning for her; that she also receives help from

---

[1] O'Neal elaborated that, on some days a single dose of three pills in the morning would be sufficient, while on other days she would also need a dose in the afternoon or evening.

her parents and son-in-law; and that she no longer participates in sports and other activities that she enjoyed before the onset of RSD. While she performs limited household chores, in her hearing testimony as well as in prior medical encounters O'Neal reported limitations on her ability to care for herself and her family.

Medical reports in the record show persistent, severe pain and hypersensitivity, with periodic swelling and discoloration of O'Neal's left leg throughout 1994, 1995, and 1996. As of October 18, 1996, O'Neal's family physician was prescribing her the painkiller Fioricet to be taken every four hours.

In summarizing the evidence, the ALJ stated that O'Neal takes her pain medication on an "as-needed" basis, that she appeared comfortable at the hearing, that she continues to drive and gets out of the house once or twice a week. The ALJ further stated, "During the day she would visit with her mother and father, do some of her housework, wash and dry dishes, do laundry, sweep the floors, shop, cook, swim in a swimming pool, also she liked to sit in a hot tub, indicating this was done in part for exercise . . . ." (2 R. at 22.) This misconstrues O'Neal's testimony to the extent it implies that these are activities she pursues on a daily basis. While she described doing some of these activities periodically, she reported that her daily activities had been significantly limited and that "[t]he majority of [her] time is spent laying down and resting." ( Id. at 51.) O'Neal

stated that she swam in the pool as therapeutic exercise on the advice of her physician.

The summary concluded:

> The claimant basically complains she is not able to work because of her reflex sympathetic dystrophy of the left leg, however, while she does have some weakness and loss of movement in her hips, leg and ankle, she is still able to move about well enough to do some types of work.

(Id. at 24.) This misconstrues O'Neal's position in that it fails to acknowledge that her primary complaint—and the primary symptom of RSD—is severe and persistent pain, to which the loss of mobility is secondary.

In his findings, the ALJ stated, "The claimant's subjective complaints including those of pain as well [as] any effects her impairments have on her residual functional capacity as she asserts them to exist are not support[ed] by the credible evidence of the record to that extent and therefore her credibility is diminished." ( Id. at 25.)

We set out the framework for analyzing allegations of disabling pain in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). Under Luna,

> We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a loose nexus between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

Kepler v. Chater, 68 F.3d 387, 390 (10th Cir. 1995) (quotations omitted). Here, the ALJ did not make specific findings under the three prongs of Luna. It is apparent from the record that RSD is a pain-producing impairment, and that there is an adequate nexus between that condition and O'Neal's complaints.

With respect to the third Luna prong, the ALJ failed to consider all of the objective medical evidence of O'Neal's pain as required. Rather, it appears the ALJ focused on a single report dealing primarily with mobility limitations rather than pain, while ignoring evidence in other reports corroborating O'Neal's allegations of severe and persistent pain.

Further, the ALJ discredited O'Neal's subjective allegations of pain without giving reasons for doing so. "[T]he claimant is entitled to have [her] nonmedical objective and subjective testimony of pain evaluated by the ALJ and weighed alongside the medical evidence. An ALJ may not ignore the evidence and make no findings." Huston v. Bowen, 838 F.2d 1125, 1131 (10th Cir. 1988) (citations omitted).

The ALJ was free to find that O'Neal's testimony was not credible, but he still must give reasons for that finding. See Reyes v. Bowen, 845 F.2d 242, 244 (10th Cir. 1988) (in general, administrative agencies must give reasons for their decisions). Specifically, while "[c]redibility determinations are peculiarly the province of the finder of fact," Diaz v. Sec'y of Health & Human Servs., 898 F.2d

774, 777 (10th Cir. 1990), "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings," Huston, 838 F.2d at 1133 (footnote omitted).

Here, the ALJ discredited O'Neal's testimony in a conclusory fashion. The ALJ did not attempt to link his credibility determination to substantial evidence, failing to point to any specific evidence contradicting or undermining O'Neal's assertions. In fact, her descriptions of objective symptomatology are supported by the overwhelming majority of the medical evidence.[2]

Facing a similar scenario in Kepler, we explained:

> [The ALJ] should have considered factors such as the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

68 F.3d at 391 (quotations and citation omitted). Here, the ALJ addressed these factors in summarizing the evidence, but mischaracterized and/or

---

[2] There are stark contradictions in the medical evidence. A November 29, 1995 letter from a Dr. Pettigrew concluding that O'Neal "may return to employment she has performed in the past" and that "[s]he is in no further need of medical care" is strikingly out of keeping with the remainder of the record. (2 R. at 296–97.)

ignored O'Neal's testimony in the summary and findings without pointing to specific evidence justifying his disregard for her allegations.

### III

Because the ALJ failed to apply the proper legal standard in assessing O'Neal's allegations of disabling pain, we **REVERSE** the decision of the district court and **REMAND** with instructions that the district court remand the case to the Commissioner for the purpose of making findings consistent with this decision.[3]

ENTERED FOR THE COURT

Carlos F. Lucero
Circuit Judge

---

[3]    We reject O'Neal's additional argument that the ALJ failed to address all of her impairments when questioning the vocational expert, because O'Neal fails to identify which impairments were ignored by the ALJ.