**Benet R. VINSON, Plaintiff,**

v.

**Larry G. MASSANARI,[1] Commissioner of Social Security, Defendant.**

**Civil Action No. 00–2191–GTV.**

United States District Court, D. Kansas.

July 17, 2001.

---

1. Larry G. Massanari became the Acting Commissioner of Social Security on March 29, 2001; therefore, he is substituted for Commissioner Kenneth S. Apfel as the defendant to this lawsuit. See 42 U.S.C. § 405(g); Fed.R.Civ.P. 25(d).

Joan H. Deans, J. H. Deans Law Office, Raytown, MO, for plaintiff.

Janice M. Karlin, Office of United States Attorney, Kansas City, KS, for defendant.

## MEMORANDUM AND ORDER

VANBEBBER, Senior District Judge.

Plaintiff· Benet R. Vinson brings this action pursuant to 42 U.S.C. §§ 405(g),

1383(c)(3) and D. Kan. Rule 83.7, seeking judicial review of the decision of the Commissioner of Social Security ("Commissioner") to deny his applications for a period of disability and disability insurance benefits under Title II of the Social Security Act ("Act") and for supplemental security income benefits under Title XVI of the Act. For the reasons set forth below, the court affirms the Commissioner's decision.

## I. Procedural Background

On August 21, 1995, plaintiff filed his applications for a period of disability, disability insurance benefits, and supplemental security income benefits claiming disability since April 14, 1995. The applications were denied both initially and upon reconsideration. At plaintiff's request, an administrative law judge ("ALJ") held a hearing on April 21, 1998, at which plaintiff and his counsel were present. On August 27, 1998, the ALJ rendered a decision in which he determined that plaintiff was not under a "disability" as defined by the Act. After the ALJ's unfavorable decision, plaintiff requested review by the Appeals Council. The Appeals Council denied plaintiff's request for review on March 31, 2000, rendering the ALJ's decision the final decision of the Commissioner.

## II. Standard of Review

The Commissioner's findings are binding on this court if supported by substantial evidence. See 42 U.S.C. § 405(g); *Dixon v. Heckler,* 811 F.2d 506, 508 (10th Cir.1987). The court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence in the record and whether the Commissioner properly applied relevant legal standards. See *Marshall v. Chater,* 75 F.3d 1421, 1425 (10th Cir.1996) (citing *Castellano v. Sec'y of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir.1994)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Castellano,* 26 F.3d at 1028 (citations and internal quotation marks omitted). The court may not reweigh the evidence or substitute its judgment for that of the ALJ or the Commissioner. See *Hamilton v. Sec'y of Health & Human Servs.,* 961 F.2d 1495, 1500 (10th Cir.1992).

## III. ALJ's Findings

In his August 27, 1998 decision, the ALJ made the following findings:

- The claimant met the disability insured status requirements of the Act on April 14, 1995, the date the claimant stated he became unable to work, and continues to meet them through the date of this decision. He admitted at the time of the hearing that he had performed substantial gainful activity through about December 31, 1995.

- The claimant has not engaged in substantial activity since approximately December 31, 1995. He has done work activity since that date, but there is insufficient evidence upon which to conclude that the work after December 31, 1995 has been substantial gainful activity.

- The medical evidence establishes that the claimant has spondylolysis at C–3—C–4, mild degenerative disc disease at L–4—S–1, blindness of the right eye, recurring arrhythmias and tremors controllable by medication, and mild dysthymia, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulation[ ] No. 4.

- The claimant's allegation and that of two other witnesses that his impairments, either singly or in combination, produce symptoms and limitations of sufficient severity to prevent all sustained work activity are inconsistent

with the medical and other evidence of record and are not credible....

- The claimant has the residual functional capacity to perform the physical exertional and nonexertional requirements of work except for lifting or carrying more than 10 pounds frequently or more than 20 pounds occasionally, or work requiring binocular vision, continuous standing or sitting without being allowed to alternate positions, reading and writing, and more than low stress, simple, routine tasks....

- The claimant is unable to perform his past relevant work as a truck driver, building repairer, and janitor.

- The claimant's residual functional capacity for the full range of light work is reduced by the limitations described in Finding No. 5.

- The claimant is 48 years old, which is defined as a younger individual....

- The claimant has an eighth grade limited education, and may be illiterate....

- The claimant does not have any acquired work skills which are transferable to the skilled or semiskilled work functions of other work....

- Based on an exertional capacity for light work and the claimant's age, education, and work experience, [the Regulations] would direct a conclusion of "not disabled."

- Although the claimant's additional nonexertional limitations do not allow him to perform the full range of light work, ... there are a significant number of jobs in the national economy which he could perform. Examples of such jobs are: hand packager and building/gate guard. A total of more than 13,000 of these jobs exists in the Kansas City area and many more nationwide, according to vocational expert opinion.

- The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision....

## IV. Discussion

■ To qualify for disability benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a severe impairment expected to result in death or to last a continuous period of twelve months. See 42 U.S.C. § 423(d)(1)(A). If the claimant establishes that he is unable to perform his past relevant work because of a medically determinable impairment, the burden shifts to the Commissioner to show that the claimant can perform other work existing in significant numbers in the national economy. See *Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir.1987). The Commissioner may meet this burden by relying on either the medical-vocational guidelines or vocational expert testimony.

The ALJ concluded that plaintiff could not return to his past relevant work as a truck driver, building repairer, or janitor, but that he could, despite his impairments, perform other work existing in significant numbers in the national economy. The ALJ reached this conclusion after presenting a vocational expert with the following hypothetical question:

Please assume that the claimant is 48 years old and has a limited 8th grade education and is illiterate and in the past 15 years has been employed as a truck driver and general laborer.... Further assume that the claimant has tremors, particularly in the hands with good response to medical therapy and no significant impairment of fine or gross dexterity. He has lifelong tachycardia with surgical ablation [ (a procedure to correct the tachycardia) ] in May of 1995 with only 8 to 10 subsequent attacks to date for which he has adequate warning

and can therefore pull over to the side of the road when driving until such episodes pass. He is blind in the right eye and has left eye vision correctable to 20/30. He can occasionally lift 20 pounds and frequently carry 10 pounds and can alternately sit and stand and walk throughout a normal work day, taking into consideration generalized arthritis. Depression results in a limitation to low stress simple routine tasks. Again, the claimant is illiterate. Assume there are no other limitations and restrictions. If all of the above can be assumed to be true, can the claimant perform any past relevant work or other work which exists within the 100 mile radius of Bonner Springs, Kansas (where he lives) and in other regions of the national economy?

In reply to the ALJ's question, the vocational expert stated that plaintiff could not perform his past relevant work, but that he could perform several other jobs existing in significant numbers in both the local and national economy. Based on this statement, the ALJ concluded that plaintiff was not under a "disability" as defined by the Act.

Plaintiff urges the court to reverse the final decision of the Commissioner because taking the record as a whole, the ALJ's decision is not supported by substantial evidence and was not made according to applicable law. Specifically, plaintiff alleges that the ALJ erred: (1) in failing to give substantial weight to the opinion of Dr. Phillip E. Martin, one of plaintiff's treating physicians; (2) in finding plaintiff's subjective complaints of pain not credible; and (3) in failing to consider the combined effects of all of plaintiff's impairments. The court rejects each of these arguments for the following reasons.

### A. Dr. Martin's Opinion

The ALJ properly weighed the opinion of Dr. Martin. "A treating physi-

cian's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record." *Walker v. Apfel*, No. 97–1189–MLB, 1998 WL 928672, at *4 (D.Kan. Sept.18, 1998) (citing *Castellano*, 26 F.3d at 1029). If a treating physician's opinion is inconsistent with other evidence, the ALJ must determine whether the other evidence outweighs the treating physician's opinion. See *Goatcher v. United States Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir.1995). In weighing any medical opinion, the ALJ must consider the following factors: (1) the "length of the treatment relationship and the frequency of examination"; (2) the "nature and extent of the treatment relationship"; (3) the amount of relevant evidence supporting the physician's opinion; (4) how consistent that opinion is with the rest of the record; (5) whether the physician is a specialist; and (6) other factors tending to support or contradict the opinion. See 20 C.F.R. § 404.1527(d)(2)-(6). The ALJ cannot disregard a treating physician's opinion that a claimant is disabled without giving legitimate and specific reasons. See *Goatcher*, 52 F.3d at 290 (citing *Frey*, 816 F.2d at 513).

Plaintiff points to the fact that Dr. Martin imposed several restrictions on his activity which the ALJ failed to include in his hypothetical question to the vocational expert. Dr. Martin opined that plaintiff should not carry over ten pounds and that he should not stand or walk for more than one hour in an eight-hour day. Dr. Martin also limited plaintiff's sitting to four hours a day, and stated that plaintiff should not climb, balance, stoop, or crouch.

The ALJ stated in his decision that he omitted some of Dr. Martin's restrictions

because they were inconsistent with treating specialists' opinions, testing results and treatment measures. See *Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir.2000) (approving a hypothetical question which omitted restrictions not supported by substantial evidence). The ALJ noted that he was giving more weight to "the findings and opinions of various neurological and other specialists who [had] examined or treated the claimant throughout the last six years, including some referred by Dr. Martin." The ALJ explained the medical evidence that he found inconsistent with some of Dr. Martin's restrictions:

> The claimant has no significant, established medical impairment affecting his lower back, and there is no evidence of ongoing radiculopathy or disorganization of motor function in the lower extremities. . . . There is no credible medical evidence of any significant underlying cardiovascular disease. The claimant admitted at the hearing that he had . . . only eight [to] ten tachycardia attacks after his ablation procedure in May 1995, and that each time, while driving, he had ample warning of the problem with time to pull over to the side of the road and allow the episodes to pass. . . .

The claimant has had no recent surgery or inpatient hospitalization. He has not been referred for physical therapy or to any pain clinic or pain specialist for treatment since his alleged onset date of disability. . . .

After reviewing the record, the court concludes that the ALJ's findings are supported by substantial evidence. Although Dr. Martin was a treating physician, some of his restrictions on plaintiff's activity are contradicted by the findings of treating specialists and other substantial evidence in the record. For example, the court finds the following evidence inconsistent with the need to limit plaintiff's activity as strictly as Dr. Martin suggested: (1) plaintiff consistently passed treadmill tests, only having to stop the tests because of fatigue—not chest pains; (2) one treating specialist considered surgery for plaintiff's back and leg pain, but decided several times to defer surgery and continue evaluating plaintiff; (3) several doctors prescribed physical therapy or exercises for plaintiff's pain, but at least once, plaintiff admitted he was not doing the exercises; (4) examinations of plaintiff showed a normal range of motion and muscle strength; (5) plaintiff was not on medication for his depression at the time of the hearing, although he had taken medication before; and (6) in October of 1995, an examining psychologist stated in a report that plaintiff "did, parenthetically, elude [sic] to the fact his cardiologists have not ruled out employment for him and further indicated that the tachycardia condition, although worrisome and bothersome to him, is not a serious or fatal disorder."[2]

Perhaps most persuasive to the court is the fact that the evidence fails to indicate any noticeable deterioration in plaintiff's health occurring on April 14, 1995 or December 31, 1995.[3] In fact, plaintiff's tachycardia showed marked improvement be-

**2.** The ALJ also noted that "[o]nly Dr. Martin has stated that the claimant is disabled and seriously incapacitated." Plaintiff argues that the ALJ improperly disregarded this opinion. "That opinion is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]." *Castellano*, 26 F.3d at 1029 (citing 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2)).

The court concludes that the ALJ appropriately questioned and ultimately rejected Dr. Martin's statement that plaintiff was disabled.

**3.** The ALJ found that plaintiff was engaged in substantial gainful activity from April 14, 1995 through December 31, 1995. For the purposes of this opinion, the date on which plaintiff stopped working is irrelevant; the

ginning in May of 1995 and his tremors lessened with medication beginning in December of 1995. Prior to April 14, 1995, plaintiff was blind in one eye, had tremors, and regularly saw physicians for chest pain, leg pain, and back pain. He worked despite these conditions. The court fails to see April 14, 1995, or any date thereafter, as a "turning point" at which plaintiff became unable to work. See *Noble v. Callahan*, 978 F.Supp. 980, 986 (D.Kan. 1997) ("[The] plaintiff's impairment cannot be considered presently disabling without showing there has been a significant deterioration of his condition.") (citing *Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir.1992)).

### B. Credibility of Plaintiff's Subjective Complaints

 The ALJ also did not err in finding plaintiff's subjective complaints of disabling pain not credible. Because the ALJ is " 'optimally positioned to observe and assess witness credibility,' " *Adams v. Chater*, 93 F.3d 712, 715 (10th Cir.1996) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991)), the court "may overturn such a credibility determination only when there is a conspicuous absence of credible evidence to support it," *Patterson v. Apfel*, 62 F.Supp.2d 1212, 1217 (D.Kan.1999) (citing *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir.1992)). Credibility determinations made by the ALJ are generally treated as binding upon review. See *Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir.1990).

 When evaluating the credibility of a claimant's complaints of disabling pain, the ALJ should ask the following questions: "(1) whether [the][c]laimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a 'loose nexus' between the proven impairment and [the][c]laim-

ant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, [the][c]laimant's pain is in fact disabling." *Musgrave v. Sullivan*, 966 F.2d 1371, 1376 (10th Cir. 1992) (citing *Luna v. Bowen*, 834 F.2d 161, 163–64 (10th Cir.1987)). In deciding whether the claimant's pain is disabling, the ALJ should consider the following factors:

the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir.1988).

 Assuming that plaintiff established that he has impairments with a "loose nexus" to his allegations of pain, the court still concludes that the ALJ did not err in finding plaintiff's complaints of disabling pain not credible. The ALJ painstakingly detailed his reasons for discrediting plaintiff's subjective complaints. As discussed previously in this opinion, the ALJ described several inconsistencies in the objective medical evidence. Moreover, the ALJ noted that plaintiff continued to haul farm equipment locally, making gross earnings of $3,414.00 in 1997, and stated that "[t]o the extent that [plaintiff's] daily activities are restricted, they are restricted primarily by his choice and not [by] any ongoing medical prescription." He pointed out that much of plaintiff's medical evidence consisted of treatment records for short-term conditions including a broken toe, a leg ulcer, and painful urination,

court fails to see a noticeable deterioration in plaintiff's health after either date.

conditions that even plaintiff did not consider disabling. Finally, the ALJ noted that plaintiff's tremors were treatable with medication, and that plaintiff's tachycardia episodes were nearly eliminated after ablation. The court concludes that there is not a "conspicuous absence of credible evidence" to support the ALJ's finding that plaintiff's subjective complaints of disabling pain were exaggerated. *Patterson*, 62 F.Supp.2d at 1217 (citation omitted).

### C. Combined Effect of Plaintiff's Impairments

Finally, the ALJ properly considered plaintiff's impairments in combination. The ALJ "must consider the combined effects of impairments that may not be severe individually, but which in combination may constitute a severe medical disability." *Hargis v. Sullivan*, 945 F.2d 1482, 1491 (10th Cir.1991); see also 20 C.F.R. § 404.1523. While the ALJ addressed plaintiff's impairments individually, he included all of the impairments supported by substantial evidence in his hypothetical to the vocational expert. As discussed previously, this court finds no error in the ALJ's hypothetical. Furthermore, the ALJ specifically stated that he had considered all of plaintiff's impairments in combination. After reviewing the record as a whole, the court is convinced that the ALJ properly considered the cumulative effect of plaintiff's impairments.

IT IS, THEREFORE, BY THE COURT ORDERED that the decision of the Commissioner is affirmed.

The case is closed.

Copies of this order shall be mailed to counsel of record.

**IT IS SO ORDERED.**