**Darren M. WRIGHT, Plaintiff,**

**v.**

**Jo Anne B. BARNHART,
Commissioner of Social
Security, Defendant.**

**No. CIV.A. 04–2068–GTV.**

United States District Court,
D. Kansas.

March 16, 2005.

James H. Green, Kansas City, MO, for Plaintiff.

Christopher Allman, Office of United States Attorney, Kansas City, KS, for Defendant.

### MEMORANDUM AND ORDER

VANBEBBER, Senior District Judge.

Plaintiff Darren Wright brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) and D. Kan. Rule 83.7, seeking judicial review of the decision of the Commissioner of Social Security ("Commissioner") to deny his applications for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act. Plaintiff claims that he is disabled because of the following impairments: injuries from a gunshot wound he received in 1979; a

heart attack he suffered in 1994; and pain in his back and left leg caused by a tree limb falling on him in 2000. The record indicates that Plaintiff completed high school and some vocational training courses. His past work experience includes employment as a cleaner/janitor and a cook.

This appeal focuses on the Commissioner's decision that Plaintiff is not disabled. For the following reasons, the Commissioner's decision is affirmed.

## I. Procedural Background

On February 23, 2001, Plaintiff filed applications for disability insurance and supplemental insurance benefits, claiming disability since July 26, 2000. The applications were denied both initially and upon reconsideration. At Plaintiff's request, an administrative law judge ("ALJ") held a hearing on April 16, 2003, at which Plaintiff and his counsel were present. On July 25, 2003, the ALJ rendered a decision in which he determined that Plaintiff was not under a "disability" as defined by the Social Security Act. After the ALJ's unfavorable decision, Plaintiff requested review by the Appeals Council. The Appeals Council denied Plaintiff's request for review on February 18, 2004, rendering the ALJ's decision the final decision of the Commissioner.

## II. Standard of Review

The Commissioner's findings are binding on this court if supported by substantial evidence. 42 U.S.C. § 405(g); *Dixon v. Heckler*, 811 F.2d 506, 508 (10th Cir.1987). The court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence in the record and whether the Commissioner properly applied relevant legal standards. *Marshall v. Chater*, 75 F.3d 1421, 1425 (10th Cir.1996) (citing *Castellano v. Sec'y of Health & Human Services*, 26 F.3d 1027, 1028 (10th Cir.1994)). "Sub-

stantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Castellano*, 26 F.3d at 1028 (citations and internal quotation marks omitted). The court may not reweigh the evidence or substitute its judgment for that of the ALJ or the Commissioner. *Hamilton v. Sec'y of Health & Human Services*, 961 F.2d 1495, 1500 (10th Cir.1992).

## III. The ALJ's Findings

In his July 25, 2003 decision, the ALJ made the following findings:

1. Claimant meets the nondisability requirements for a period of disability and disability insurance benefits set forth in Section 216(i) of the Social Security Act and is insured for disability benefits through the date of this decision.

2. Claimant has not engaged in substantial gainful activity since his alleged disability onset date, July 26, 2000.

3. Claimant has the following "severe" impairments: degenerative disc disease of the lumbosacral spine with radiculopathy, status post traumatic fracture at L3–4 in July 2000; status post gunshot wound to the stomach; history of lymphoma, in remission; and chronic bronchitis.

4. Claimant's medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, 20 CFR, Part 404.

5. The undersigned finds claimant's allegations and testimony regarding his impairments and resultant symptoms and limitations are not totally credible for the reasons set forth in the body of this decision.

6. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of claimant's impairments (20 CFR §§ 404.1527 and 416.927).

7. Claimant has the following residual functional capacity: He cannot lift more than 10 pounds, even occasionally; he cannot engage in prolonged walking; he cannot engage in work activity without having the opportunity to alternate sitting and standing at 30 minute intervals; he can only occasionally bend, stoop, squat, crouch, crawl, kneel, or climb; and he cannot operate foot controls, push or pull, or engage in repetitive movements with his left lower extremity.

8. Claimant is unable to perform any of his past relevant work (20 CFR §§ 404.1565 and 416.965).

9. Claimant is a "younger" individual (20 CFR §§ 404.1563 and 416.963).

10. Claimant has a "high school" education (20 CFR §§ 404.1564 and 416.964).

11. Transferability of skills is not an issue in this case (20 CFR §§ 404.1568 and 416.968).

12. Considering claimant's vocational profile and above-described residual functional capacity, he can perform sedentary unskilled jobs that exist in significant numbers in the national economy. Examples of such jobs are surveillance systems monitor, hand mounter/photo finisher, and semiconductor assembler. This finding is based on vocational expert testimony.

13. Claimant has not been under a "disability," as defined in the Social Security Act, at any time from his alleged disability onset date, July 26, 2000, through the date of this decision. (20 CFR §§ 404.1520(f) and 416.920(f)).

## IV. Discussion

"The Secretary has established a five-step sequential evaluation process for determining whether a claimant is disabled." *Williams v. Bowen,* 844 F.2d 748, 750 (10th Cir.1988). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* Those five steps are as follows:

(1) A person who is working is not disabled.

(2) A person who does not have an impairment or combination of impairments severe enough to limit the ability to do basic work activities is not disabled.

(3) A person whose impairment meets or equals one of the impairments listed in the regulations is conclusively presumed to be disabled.

(4) A person who is able to perform work she has done in the past is not disabled.

(5) A person whose impairment precludes performance of past work is disabled unless the [Commissioner] demonstrates that the person can perform other work. Factors to be considered are age, education, past work experience, and residual functional capacity.

*Reyes v. Bowen,* 845 F.2d 242, 243 (10th Cir.1988) (citing 20 C.F.R. § 416.920(a)-(f)) (internal citations omitted).

Plaintiff contends that the ALJ committed errors at steps four and five of his decision. Specifically, Plaintiff asserts that the ALJ: (1) failed to consider Plaintiff's subjective complaints of pain in his residual functional capacity ("RFC") determination; (2) did not properly assess Plaintiff's RFC in accordance with Social Security Rule 96–8p; and (3) failed to

show that other work exists in significant numbers in the national economy that Plaintiff can perform.

### A. Plaintiff's Subjective Complaints of Pain

Plaintiff first argues that the ALJ failed to consider Plaintiff's subjective complaints of pain in assessing his RFC. In particular, Plaintiff contends that the ALJ's decision to reject his allegations of disabling pain was not supported by substantial evidence. He asserts that the ALJ did not evaluate the credibility of his subjective complaints of pain according to the applicable Social Security Regulations.

■ Because the ALJ is " 'optimally positioned to observe and assess witness credibility,' " *Adams v. Chater,* 93 F.3d 712, 715 (10th Cir.1996) (quoting *Casias v. Sec'y of Health & Human Services,* 933 F.2d 799, 801 (10th Cir.1991)), the court "may overturn such a credibility determination only when there is a conspicuous absence of credible evidence to support it," *Patterson v. Apfel,* 62 F.Supp.2d 1212, 1217 (D.Kan.1999) (citing *Trimiar v. Sullivan,* 966 F.2d 1326, 1329 (10th Cir.1992)). Credibility determinations made by the ALJ are generally treated as binding upon review. *Talley v. Sullivan,* 908 F.2d 585, 587 (10th Cir.1990).

■ When evaluating the credibility of a claimant's complaints of disabling pain, the ALJ should ask these questions: "(1) whether [the] [c]laimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and [the] [c]laimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, [the] [c]laimant's pain is in fact disabling." *Musgrave v. Sullivan,* 966 F.2d 1371, 1376 (10th Cir. 1992) (citing *Luna v. Bowen,* 834 F.2d 161, 163–64 (10th Cir.1987)). The ALJ should also consider the following factors:

the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Huston v. Bowen,* 838 F.2d 1125, 1132 (10th Cir.1988). " '[D]isability requires more than mere inability to work without pain. To be disabling, pain must be so severe ... as to preclude any substantial gainful employment.' " *Williams v. Chater,* 923 F.Supp. 1373, 1380 (D.Kan.1996) (quoting *Gossett v. Bowen,* 862 F.2d 802, 807 (10th Cir.1988)).

■ The court concludes that the ALJ properly assessed Plaintiff's RFC and appropriately weighed the credibility of Plaintiff's subjective complaints of pain according to the factors listed above.

The ALJ's decision first reviewed Plaintiff's testimony from the hearing. Plaintiff testified about several impairments to support his claim of disability. First, he stated that he is unable to run or lift heavy weights as a result of a gunshot wound to his stomach in 1979. Plaintiff stated that a bullet fragment remained in the upper part of his spine, but that he is still able to rotate his neck without limitation. Second, Plaintiff claimed that he suffered a heart attack in 1994. Plaintiff, however, admitted that doctors never told him that he had a heart attack, but that the symptoms from the pain he experienced could have been due to a heart attack. Moreover, Plaintiff stated that he has not been treated for a heart condition since 1994. Also in 1994, Plaintiff testified that doctors diagnosed him with lymphoma cancer and

recommended that he undergo chemotherapy. Plaintiff, however, decided not to receive chemotherapy because he thought it would make his cancer worse. Plaintiff testified that he has not had his cancer reevaluated since 1994 and that he did not believe the cancer caused him any problems with his alleged disability. Fourth, Plaintiff stated that he was born with asthma, but that he has not used any medications or inhalers for such condition since 1998 or 1999.

Finally, Plaintiff reported that he sustained a back injury in July 2000 when a tree limb fell on him, causing a fracture in his lumbar spine. Plaintiff testified that his doctors prescribed him OxyContin, an anti-inflammatory pain medication, for his injury. Plaintiff admitted that his doctors were trying to treat his condition conservatively, but if that treatment plan did not work he would have surgery on his neck. Due to the injury, Plaintiff stated that he suffered from pain in his back, lower left hip, as well as numbness and pain throughout his left leg. The pain is not constant, as he testified that it only is a problem when he sits or stands for longer than one hour or one hour and a half, or if he tries to lift heavy objects over twenty five pounds. He also stated that he is able to walk a couple of blocks and climb two flights of stairs before his back and leg pain forces him to stop. Plaintiff also claimed that once or twice a month he is unable to do anything at all. To relieve the pain, Plaintiff testified that he tried lying down for thirty minutes to an hour, two to three times per day. He stated that the pain sometimes kept him up at night and that he usually placed a pillow between his legs to elevate his leg when he slept. While Plaintiff informed the ALJ that he still had a prescription for OxyContin, he stated that he could not afford to purchase it. Instead, Plaintiff testified that he took Ibuprofen and utilized massage and heating pads to ease his pain.

The ALJ next summarized Plaintiff's testimony concerning his daily activities. Plaintiff stated that he lived alone in a one bedroom apartment. At home, Plaintiff reported that he watched television, cleaned his apartment, cooked, and did laundry. He informed the ALJ that he went to the grocery store once a month, but that his sister drove him because he did not own a vehicle. Plaintiff also stated that was able to sit through a two-hour movie at the movie theatre, although he claimed that he often rotated his sitting position. Lastly, Plaintiff testified that he went to church about every other week and that he was able to sit through an hour and fifteen minute service.

The ALJ then reviewed the relevant medical evidence. A discharge summary from Bethany Medical Center dated September 2, 1994, stated that Plaintiff was admitted with complaints of severe chest pain on August 25, 1994. CT scans and x-rays of Plaintiff's chest were unremarkable, and an echocardiogram revealed a mild concentric hypertrophy of his left ventricle. The report further noted that Plaintiff was discharged in satisfactory condition without any chest pain or any distress.

Plaintiff's medical record also contains several evaluations from doctors regarding the injuries he suffered after a tree limb fell on him in July 2000. A discharge report from Dr. Steven Wilkinson, dated August 2, 2000, diagnosed Plaintiff with left L1 and L2 transverse process fractures. A physical examination performed by Dr. Wilkinson noted that Plaintiff experienced limited movement of his lower extremity secondary to pain. Dr. Wilkinson prescribed Plaintiff OxyContin for pain relief. On March 1, 2001, Dr. George Varghese evaluated Plaintiff, noting that Plaintiff's back pain was fairly under control. Plaintiff complained of numbness in

his left leg, Plaintiff's pain increased with walking or standing, and that Plaintiff experienced some relief by taking pain pills. Upon physical examination, Dr. Varghese observed that Plaintiff moved around without much discomfort, his lumbar spine flexion and extension were within normal limits except for some complaints of pain on the iliac crest area, and his left lower extremity showed normal range of motion and muscle strength. A consultative exam performed by Dr. John Verstreate on March 10, 2001, reported that Plaintiff did not use an assistive device for ambulating, he did not have difficulty with heal and toe walking, but that he had severe difficulty squatting and rising from the sitting position. Dr. Verstreate concluded that Plaintiff suffered from arthralgias. Finally, the record indicates that Plaintiff sought treatment for back pain from Dr. Jasper Fullard in June 2001, July 2001, and January 2002. Dr. Fullard diagnosed Plaintiff with degenerative disc disease of the LS spine with radiculopathy.

Based on the objective findings from Plaintiff's medical record, Plaintiff's testimony from the ALJ hearing, and Plaintiff's sporadic work history, the ALJ concluded that Plaintiff's alleged impairments and limitations were not totally credible. He then determined that Plaintiff possessed the following RFC:

> He cannot lift more than 10 pounds, even occasionally; he cannot engage in prolonged walking; he cannot engage in work activity without having the opportunity to alternate sitting and standing at 30 minute intervals; he can only occasionally bend, stoop, squat, crouch, crawl, kneel, or climb; and he cannot operate foot controls, push or pull, or engage in repetitive movements with his left lower extremity.

After reviewing the ALJ's decision and the record, the court holds that Plaintiff's RFC is supported by substantial evidence. Moreover, the ALJ's determination that Plaintiff's subjective complaints of pain were not totally credible is also supported by substantial evidence. The ALJ provided a well-reasoned opinion, thoroughly reviewing the record and evaluating Plaintiff's allegations under the proper legal standards.

### B. Social Security Rule 96–8p

■ Next, Plaintiff claims that the ALJ failed to evaluate Plaintiff's RFC in accordance with Social Security Rule 96–8p ("SSR 96–8p"). In particular, Plaintiff maintains that the ALJ ignored all of the considerations mandated by SSR 96–8p and the applicable law of the Tenth Circuit.[1] The court disagrees.

A "claimant bears the burden at step four of proving his inability to return to his particular former job and to his former occupation as that occupation is generally performed throughout the national economy." *Andrade v. Sec'y of Health & Human Services*, 985 F.2d 1045, 1051 (10th Cir.1993). "However, in order to make the ultimate finding that a claimant is not disabled at step four, the ALJ is required by SSR 96–8p to make specific and detailed predicate findings" at each of three phases. *Winters v. Barnhart*, No. 00–2419–DJW, 2002 WL 1286134, at *14 (D.Kan. June 5, 2002). "In the first phase, the ALJ must evaluate a claimant's physical and mental [residual functional capacity], and in the second phase, he must determine the phys-

---

1. Plaintiff's counsel provides no specific argument beyond this conclusory statement. It appears that this practice is common with Plaintiff's counsel. *See e.g., Holland v. Barnhart*, 333 F.Supp.2d 1142, 1147 (D.Kan.2004) ("Plaintiff also argues that the ALJ failed to assess [P]laintiff's RFC in accordance with Social Security Rule 96–8p .... It is unclear in what respect [P]laintiff believes SSR 96–8p was not followed by the ALJ since [P]laintiff gives no analysis in support of his argument.").

ical and mental demands of the claimant's past relevant work." *Winfrey v. Chater,* 92 F.3d 1017, 1023 (10th Cir.1996) (citation omitted). "In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands in phase two despite the mental and/or physical limitations found in phase one." In short, SSR 96–8p requires the ALJ to "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence" when assessing a claimant's RFC. Soc. Sec. Rul. 96–8p, 1996 WL 374184, at *7 (July 2, 1996). As stated before, the ALJ's RFC is supported by substantial evidence. The ALJ fulfilled his obligation under SSR 96–8p and applicable Tenth Circuit law to discuss the evidence contained in Plaintiff's medical record and to provide specific reasons for his conclusions.

## C. The ALJ's Analysis at Step Five

██ Finally, Plaintiff contends that the ALJ failed to satisfy the burden that shifts from Plaintiff to the Commissioner at step five: to establish that jobs existed in significant numbers in the national economy that Plaintiff could perform. Plaintiff's attorney provides no citation from the record to support his argument. Instead, he cites several decisions from the Eighth Circuit outlining the Commissioner's burden at step five. Then, Plaintiff's attorney states in a conclusory fashion:

Therefore, our analysis must center on whether or not the Commissioner has met it [sic] burden at step 5 to show that there are other jobs which exist in significant numbers in the national economy that Mr. Wright can perform. It is clear that Mr. Wright has met his burden of persuasion. However, it is equally clear that the [C]ommissioner failed to meet its [sic] burden.

The Commissioner responds that substantial evidence supports the ALJ's determination at step five. The court agrees.

Step five of the sequential analysis requires the ALJ to determine whether the claimant possesses the RFC " 'to perform other work in the national economy in view of his age, education, and work experience.' " *Williams,* 844 F.2d at 751 (citation omitted). Because the burden shifts to the Commissioner at step five, "the claimant is entitled to benefits if the Secretary cannot establish that the claimant retains the capacity 'to perform an alternative work activity and that this specific type of job exists in the national economy.' " *Id.* (citations omitted).

After the ALJ concluded that Plaintiff could not perform his past relevant work, the ALJ relied on a vocational expert's testimony to evaluate whether Plaintiff retained the ability to perform occupations that existed in the regional or national economy. At the hearing, the ALJ presented a hypothetical to the vocational expert regarding Plaintiff's ability to work with the following background and limitations: a high school education with some vocational training; past work as a janitor and a cook; the inability to lift or carry more than ten pounds, even occasionally; the inability to walk for a prolonged period of time; the inability to perform work activities requiring him to bend, stoop, squat, crouch, crawl, kneel, or climb; and the inability to operate foot controls or engage in pushing or pulling movements with his left lower extremity. Moreover, the ALJ informed the vocational expert that Plaintiff could only work at a job that would permit him to alternate between sitting and standing at thirty minute intervals. In response, the vocational expert testified that although Plaintiff could not perform his past relevant work with those stated limitations, he could perform such

occupations as a surveillance system monitor, a photo finisher, and a semiconductor assembler. The vocational expert characterized those three jobs as sedentary and unskilled, explained that those jobs offered a sit/stand option, and stated that they existed in significant numbers in the Kansas and national economies. The ALJ found that the vocational expert's testimony was credible, and thus, he reached the conclusion that Plaintiff was not disabled at step five. The court concludes that the ALJ's determination at step five is supported by substantial evidence. The ALJ elicited proper testimony from the vocational expert to demonstrate that Plaintiff could perform other work that existed in significant numbers in the State of Kansas and the national economy.

IT IS, THEREFORE, BY THE COURT ORDERED that the decision of the Commissioner is affirmed.

Copies of this order shall be transmitted to counsel of record.

The case is closed.

**IT IS SO ORDERED.**