Gregory MOORE, Plaintiff,

v.

Jo Anne B. BARNHART,
Commissioner of Social
Security, Defendant.

No. CIV.A.03–2331–KHV.

United States District Court,
D. Kansas.

Feb. 19, 2004.

James H. Green, Kansas City, MO, for Plaintiff.

Christopher Allman, Office of United States Attorney, Kansas City, KS, for Defendant.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

Gregory Moore appeals the final decision of the Commissioner of Social Security to deny disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 et seq. This matter is before the Court on *Plaintiff's Social Security Brief* (Doc. # 15) filed October 7, 2003, which the Court construes as a motion for judgment. For reasons set forth below, the Court overrules plaintiff's motion.

### Procedural Background

On May 7, 2001, plaintiff filed his disability application with the Social Security Administration. He alleged a disability onset date of April 11, 2001. Plaintiff listed his impairment as three compression fractures in his back. Plaintiff's benefit application was denied initially.[1] On May 2, 2003, the administrative law judge ("ALJ") concluded that plaintiff was not under a disability as defined in the Social Security Act and that he was not entitled to disability benefits. On June 16, 2003, the Appeals Council denied plaintiff's request for review. The decision of the ALJ stands as the final decision of the Commissioner. *See* 42 U.S.C. § 405(g), § 1383(c)(3).

---

1. Plaintiff's initial benefit application was processed by the Missouri State agency. Under a test program, Missouri has eliminated the reconsideration step in the administrative appeals process. Accordingly, plaintiff's appeal went directly from the initial denial to the hearing level. *See Brief Of The Commissioner* (Doc. # 18) filed December 8, 2003, at 1 n. 1.

## Factual Background

The following is a brief summary of the evidence presented to the ALJ.

Gregory Moore is 47 years old and a high school graduate. He suffers from a compression fracture of three lumbar vertebrae and mild right carpal tunnel syndrome. Transcript Of Proceedings Before The Social Security Administration ("Tr.") at 13, attached to defendant's *Answer* (Doc. # 11) filed August 22, 2003. The ALJ concluded that plaintiff is unable to perform his past relevant work as a railroad brakeman, construction worker or forklift driver, but that he can perform other work despite his impairments. Tr. 13, 16–17.

On April 11, 2001, during a police drug raid, plaintiff fell from the third story of an apartment building. Tr. 76, 148, 184. He suffered a compression fracture of three lumbar vertebrae, but he did not have any neurological deficits in his upper or lower extremities. Tr. 76. After five days in the hospital, plaintiff was discharged with instructions to avoid all repetitive twisting, bending and heavy lifting and to wear a brace. Tr. 76. Plaintiff wore the brace for approximately six months. Tr. 185.

In July of 2001, Michael B. Tentori, D.O., examined plaintiff in connection with a railroad disability retirement application. Tr. 123–27. Plaintiff reported that he could occasionally lift 10 pounds and that he could frequently lift less than 10 pounds. Tr. 126. Plaintiff reported low back and right leg pain and stated that he could walk only three or four blocks before he had to sit to relieve discomfort. Tr. 126. Dr. Tentori concluded that plaintiff had a temporary partial disability, but that

his prognosis for recovery was good. Tr. 126–27.

In July of 2001, *John V. Spiridigliozzi, Ph.D.,* a psychologist, evaluated plaintiff. He diagnosed plaintiff with a "pain disorder associated with both psychological factors and a general medical condition, acute" and recommended that plaintiff began participating in individual psychotherapy to help him manage his reported pain symptoms. Tr. 150. Dr. Spiridigliozzi was hopeful that a rehabilitation regimen would allow plaintiff to return to a job which did not require bending, lifting, weight bearing or motion which would exacerbate his physical injury. *Id.* Dr. Spiridigliozzi rated plaintiff's global assessment of functioning ("GAF") at 61,[2] which indicates that plaintiff had some mild symptoms or some difficulty in social, occupational or school functioning, but that he was generally functioning pretty well. *See DSM–IV* at 32.

On December 11, 2001, Keith L. Allen, Ph.D., a psychologist, examined plaintiff. Dr. Allen found that plaintiff did not have "any significant depression, anxiety, or psychotic processes." Tr. 157. He noted that plaintiff had (1) cocaine dependency by history which was in remission and (2) a personality disorder not otherwise specified with antisocial features and (3) a GAF score of 70, which indicated that he had some mild symptoms or some difficulty in social, occupational or school functioning but that he was generally functioning pretty well. Tr. 157; *DSM–IV* at 32. Dr. Allen indicated that plaintiff did not need further inpatient treatment for substance abuse, but that he needed to stay in an ongoing outpatient treatment program so

---

**2.** The GAF is a subjective determination based on a scale of 100 to 1 of "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders* (4th ed. 1994) (*"DSM–IV"*) at 30. The scale does not evaluate impairments caused by physical or environmental factors. *See id.*

that he could remain off drugs and alcohol "while in training and/or job placement." *Id.*

In January of 2002, Mary E. Brothers, M.D. examined plaintiff in connection with his application for benefits. Tr. 158. Plaintiff denied depression or anxiety problems. Tr. 160. Dr. Brothers concluded that plaintiff should not bend or stoop repeatedly at the waist or attempt to lift over 20 pounds; that he probably needed a cane to assist with prolonged walking or walking on uneven surfaces or stair climbing; that he could stand and walk 30 minutes at a time and at least four hours out of an eight-hour day; and that he could sit six hours a day but must break and stretch or change posture at least hourly. Tr. 164. Dr. Brothers noted that one clinic note indicated some prior pain behavior, but that she detected no pain behavior at the time of examination. Tr. 163. Dr. Brothers noted that plaintiff had "[p]robable depression and frustration, due to perceived indifferent medical care and/or discrimination" and that his memory might be somewhat impaired. Tr. 164. She noted that plaintiff should follow up with a physiatrist or pain management specialist. *Id.*

In August of 2002, Srinivas Nalamachu, M.D., a comprehensive rehabilitation specialist, examined plaintiff. Based on an MRI, Dr. Nalamachu concluded that plaintiff's compression fractures were mild and did not require surgical intervention. Tr. 117. In the fall of 2002, plaintiff received several steroid injections, but he eventually had to terminate the treatments because of a health insurance change. Tr. 135, 140, 188–89.

At a hearing on April 9, 2003, plaintiff testified that he had constant pain in his back and right leg. On a scale of one to ten, he rated the pain as five to seven all the time, every day. Tr. 189. Plaintiff testified that he had taken a number of medications, and had steroid injections, with only limited relief. Plaintiff testified that he could walk at a competitive pace for a block or a block and a half without pain, that he could stand for 30 to 40 minutes before pain and that in an eight-hour day, he could sit four or five hours without pain. Tr. 194–95.

Since his back injury, plaintiff has worked on limited occasions as a factory worker and forklift operator for a temporary agency. Tr. 214–15.[3] Plaintiff testified that he could not do factory work where he had to maintain a certain pace to keep up with a machine. *Id.* Plaintiff testified that he could work as a forklift operator as long as he did not have to maintain a certain pace. Tr. 215–16. Since his back injury, plaintiff also has helped on construction jobs, cleaning up an area before renovation. Tr. 202.

In his order of May 2, 2003, the ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

2. The claimant's compression fracture of three lumbar vertebrae is a severe impairment, based upon the requirements in the Regulations. (20 CFR § 416.921).

3. This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation 4.

4. The claimant's allegations regarding his limitations are not totally credi-

---

**3.** Plaintiff testified that he had worked six days during the two months before his hearing in April of 2003. Tr. 214.

ble for the reasons set forth in the body of the decision.

5. The undersigned has carefully considered all of the medical opinions in the record regarding the severity of the claimant's impairment (20 CFR § 416.927).

6. The claimant has the residual functional capacity to occasionally lift up to 20 pounds, frequently lift and carry up to 10 pounds, sit for 6 hours, and stand or walk for 2 hours, of an 8–hour day. The claimant can only occasionally stop, crouch, or climb.

7. The claimant is unable to perform any of his past relevant work (20 CFR § 416.965).

8. The claimant was 45 years old on the alleged onset date, is currently 47 years old, and is considered to be a "younger" individual (20 CFR § 416.963).

9. The claimant has a high school education and additional college level courses (20 CFR § 416.964).

10. The claimant's work skills are not transferable to work within his residual functional capacity (20 CFR § 416.968).

11. The claimant has a residual functional capacity to perform a wide range of sedentary work (20 CFR § 416.967).

12. Based on an exertional capacity for sedentary work, and the claimant's age, education, and work experience, a finding of "not disabled" is directed by Medical–Vocational Rule 201.21.

13. The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 416.920(f)).

Tr. 16–17.

### Standard Of Review

■ The ALJ decision is binding on the Court if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Dixon v. Heckler,* 811 F.2d 506, 508 (10th Cir.1987). The Court must determine whether the record contains substantial evidence to support the decision and whether the ALJ applied the proper legal standards. *See Castellano v. Sec'y of HHS,* 26 F.3d 1027, 1028 (10th Cir.1994). While "more than a mere scintilla," substantial evidence is only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Evidence is not substantial "if it is overwhelmed by other evidence-particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion." *Knipe v. Heckler,* 755 F.2d 141, 145 (10th Cir.1985) (citation omitted).

### Analysis

■ Plaintiff bears the burden of proving disability under the Social Security Act. *See Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir.1989). The Social Security Act defines "disability" as the inability to engage in any substantial gainful activity for at least 12 months due to a medically determinable impairment. *See* 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is under a disability, the Commissioner applies a five-step sequential evaluation: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) whether the impairment prevents the claimant from continuing his past rele-

vant work; and (5) whether the impairment prevents the claimant from doing any kind of work. *See* 20 C.F.R. §§ 404.1520, 416.920. If a claimant satisfies steps one, two and three, he will automatically be found disabled; if a claimant satisfies steps one and two, but not three, he must satisfy step four. If step four is satisfied, the burden shifts to the Commissioner to establish that the claimant is capable of performing work in the national economy. *See Williams v. Bowen,* 844 F.2d 748, 751 (10th Cir.1988).

Here, the ALJ denied benefits at step five, finding that plaintiff is capable of performing work in the national economy. In reaching his conclusion, the ALJ agreed that plaintiff had a severe impairment but rejected plaintiff's argument that he could not work full time because of his condition.

## I. Residual Functional Capacity Assessment

Plaintiff does not challenge the ALJ conclusion as to exertional limitations in his residual functional capacity ("RFC") as-

sessment, but he argues that the ALJ erred by failing to include non-exertional impairments in his RFC.[4] The ALJ concluded that plaintiff's "nonexertional limitations do not significantly affect his ability to perform a wide range of unskilled sedentary work." Tr. 16 Plaintiff does not identify any specific nonexertional impairments, but he apparently alleges that he has nonexertional limitations caused by both pain and a personality disorder.[5]

■■■ As to pain, plaintiff does not challenge the ALJ conclusion that his subjective complaints "are not entirely credible." Tr. 15. Although plaintiff does not object to this part of the decision, substantial evidence supports the ALJ conclusion. The medical evidence revealed that plaintiff's compression fractures were mild and that by January of 2002, he could perform sedentary work. Tr. 13–14. In addition, plaintiff's daily activities were consistent with the physical demands of sedentary work. Tr. 15.[6] Substantial evidence supports the ALJ conclusion that plaintiff did not have disabling pain.[7]

---

4. Exertional impairments are strength related. A nonexertional limitation is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect the claimant's ability to meet the non-strength demands of the job. 20 C.F.R. § 404.1569a(c). Conditions which make it difficult for the claimant to maintain attention or concentration are considered nonexertional limitations. 20 C.F.R. § 404.1569a(c)(1)(ii). Nonexertional limitations may include "mental impairments, such as the inability to understand, to carry out and remember instructions, and to respond appropriately in a work setting ... chronic alcoholism; drug dependence; dizziness; and pain." *Williams,* 844 F.2d at 752.

5. In his application for benefits, plaintiff did not allege any mental impairment such as a personality disorder. In addition, other than pain management, plaintiff does not allege that he ever sought treatment for any mental impairment.

6. Plaintiff testified that he could walk at a competitive pace for a block or a block and a half without pain, that he could stand 30 to 40 minutes at a time before pain and that in an eight-hour day, he could sit four or five hours without pain. Tr. 194–95. Based on his daily activities and other evidence, the ALJ found that plaintiff could do slightly more—six hours of sitting a day.

7. The Tenth Circuit has set forth the proper framework for analyzing evidence of disabling pain. The relevant factors are (1) whether claimant proves with objective medical evidence an impairment that causes pain; (2) whether a loose nexus exists between the impairment and the subjective complaints of pain; and (3) whether the pain is disabling based upon all objective and subjective evidence. *See Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir.1994); *Luna v. Bowen,* 834 F.2d 161, 163–64 (10th Cir.1987). In the final step, the ALJ should consider the following factors:

Plaintiff notes that in July of 2001, Dr. Spiridigliozzi diagnosed him with a "pain disorder associated with both psychological factors and a general medical condition, acute" and recommended that plaintiff began participating in individual psychotherapy to help him manage his reported pain symptoms. Tr. 150. The ALJ gave limited weight to Dr. Spiridigliozzi's opinion because it indicated only a temporary condition. Tr. 15. Although Dr. Spiridigliozzi thought that plaintiff probably could not return to full-time work "in the near future" because of pain, he was hopeful that a rehabilitation regimen would allow plaintiff to return to a job with some restrictions. Tr. 150. In July of 2001, Dr. Tentori also concluded that plaintiff had a temporary partial disability, but that his prognosis for recovery was good. Tr. 126–27. By January of 2002, Dr. Brothers concluded that plaintiff could stand and walk 30 minutes at a time and at least four hours out of an eight-hour day and that he could sit six hours a day, but must break and stretch or change posture at least hourly. Tr. 164. Dr. Brothers observed

that a clinic note indicated some prior pain behavior, but that she detected no pain behavior during the exam. Tr. 163. Substantial evidence supports the ALJ conclusion to reject Dr. Spiridigliozzi's opinion based on his examination in July of 2001.

Plaintiff notes that in December of 2001, Dr. Allen concluded that plaintiff had a personality disorder not otherwise specified with antisocial features. *See Plaintiff's Social Security Brief* (Doc. # 15) at 15. The ALJ considered Dr. Allen's opinion, but noted that Dr. Allen also found that plaintiff had adequate intelligence and memory and a GAF score of 70, which indicates some mild symptoms but that plaintiff was generally functioning pretty well.[8] Tr. 14; *see DSM–IV* at 32. Dr. Allen also found that plaintiff did not have "any significant depression, anxiety, or psychotic processes" and that plaintiff's cocaine dependency was in remission. Tr. 157. Dr. Allen did not opine that plaintiff's personality disorder would limit his ability to work. In fact, Dr. Allen contemplated that plaintiff would return to work. *See id.* (plaintiff does not need further

---

the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Huston v. Bowen,* 838 F.2d 1125, 1132 (10th Cir.1988).

In reviewing ALJ credibility determinations, the Court should "defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility." *Casias v. Sec'y of HHS,* 933 F.2d 799, 801 (10th Cir.1991). "Credibility is the province of the ALJ." *Hamilton v. Sec'y of HHS,* 961 F.2d 1495, 1499 (10th Cir.1992). At the same time, the ALJ must explain why specific evidence relevant to each factor supports a conclusion that a claimant's subjective com-

plaints are not credible. *See Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir.1995). "Findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* (quoting *Huston,* 838 F.2d at 1133). So long as he sets forth the specific evidence he relies on in evaluating the claimant's credibility, the ALJ is not required to conduct a formalistic factor-by-factor recitation of the evidence. *White v. Barnhart,* 287 F.3d 903, 909 (10th Cir.2001); *see Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir.2000).

Although plaintiff did not specifically challenge the ALJ determination of his credibility, the Court finds that the credibility determination is supported by substantial evidence.

8. At a GAF of 70, plaintiff was at the top of the category from 61 to 70. The next GAF category from 71 to 80 indicates "no more than slight impairment in social, occupational, or school functioning." *DSM–IV* at 32.

inpatient treatment for substance abuse, but needs ongoing outpatient treatment to remain off drugs and alcohol "while in training and/or job placement").

Substantial evidence supports the ALJ conclusion that plaintiff's "nonexertional limitations do not significantly affect his ability to perform a wide range of unskilled sedentary work." Tr. 16.[9] As explained below, however, because an ability to perform a "wide range" of unskilled sedentary work by itself is insufficient to support a finding of no disability, the Court must remand for further proceedings.

## II. Step Five Analysis

Plaintiff argues that the ALJ failed to sustain his burden at step five. At step five, the ALJ must determine whether—in view of plaintiff's age, education and work experience—plaintiff has the residual capacity to perform other work in the national economy. See Bowen v. Yuckert, 482 U.S. 137, 148, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). The ALJ bears the burden of proof at step five. See id. at 146 n. 5, 107 S.Ct. 2287. To meet this burden, the ALJ must find that plaintiff can perform work "in the claimant's residual functional capacity category." Talbot v. Heckler, 814 F.2d 1456, 1462 (10th Cir.1987).

Plaintiff argues that the ALJ applied incorrect legal standards in determining that plaintiff could perform other jobs in the national economy. At step five, because plaintiff has already proven that he cannot continue his previous employment, the Commissioner must show that plaintiff is able to perform other work available in

the national economy. See Bowen, 482 U.S. at 146 n. 5, 107 S.Ct. 2287. The ALJ can meet his burden in two ways. The first is by relying on the Appendix Two grids. The second is by relying on a vocational expert's testimony. In this case the ALJ relied solely on the grids. Tr. 16–17.

▇ To apply the grids, the ALJ must first find (1) that the claimant has no significant nonexertional impairment; (2) that the claimant can do the full range of work at a particular residual functional capacity on a daily basis; and (3) that the claimant can perform most of the jobs in that residual functional capacity category. See Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir.1993). Under this test, the ALJ must first decide whether the claimant asserts exertional (strength-related) impairments, nonexertional (pain or mental) impairments, or both. See id. at 1487. The grids consider only those impairments that result in exertional limitations; they may not be fully applicable when "nonexertional impairments are present." Channel v. Heckler, 747 F.2d 577, 580 (10th Cir. 1984). The mere presence of a nonexertional impairment, however, does not preclude reliance on the grids unless the ALJ finds that the nonexertional impairment interferes with the claimant's ability to work. See id. at 582 n. 6; Thompson, 987 F.2d at 1488.

Plaintiff maintains that the ALJ erred by applying the grids because plaintiff has several nonexertional impairments. As explained above, substantial evidence supports the ALJ conclusion that plaintiff's nonexertional impairments are not severe and do not significantly affect his ability to

9. Plaintiff argues that the ALJ concluded that he had the capacity to perform light work. See Plaintiff's Social Security Brief (Doc. # 15) at 16. Plaintiff cites no evidence for his assertion. Light work generally requires "a good deal of walking or standing," 20 C.F.R. § 416.967(b), but the ALJ concluded that

plaintiff could stand or walk only two hours in an eight-hour day. Tr. 16. Accordingly, the ALJ found that plaintiff had the capacity for only a wide range of unskilled sedentary work. See 20 C.F.R. § 416.967(a) (sedentary work may require occasional walking and standing).

perform a "wide range" of unskilled sedentary work. *See Glass,* 43 F.3d at 1396 (ALJ may find no disability under grid rules if substantial evidence indicates that plaintiff's nonexertional impairments are insignificant); *Eggleston v. Bowen,* 851 F.2d 1244, 1247 (10th Cir.1988) (presence of nonexertional impairment does not preclude use of grids if nonexertional impairment does not further limit claimant's ability to perform work).

■ Although plaintiff did not raise the issue, the Court notes that the ALJ found that plaintiff had the capacity for only a "wide range" of unskilled sedentary work. Tr. 16, 17. As noted above, to apply the grids conclusively, the ALJ must first find that the claimant can do the "full range" of work at a particular residual functional capacity on a daily basis. *Thompson,* 987 F.2d at 1488; *see Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir.1999) (when requirement limits claimant's ability to do full range of sedentary work, ALJ may not rely exclusively on grids); Soc. Sec. Ruling 96–9P, *Policy Interpretation Ruling Titles II & XVI: Determining Capability To Do Other Work—Implications Of A Residual Functional Capacity For Less Than A Full Range Of Sedentary Work,* 1996 WL 374185, at *4 (July 2, 1996) (in order for sedentary work grid to direct a conclusion of "not disabled," claimant must be able to perform "full range" of work in that category).

■ From the ALJ opinion, the Court cannot ascertain precisely why the ALJ found that plaintiff could perform less than a "full range" of sedentary work.

Based on the limitations which the ALJ found, the Court assumes that the ALJ either (1) mistakenly used the phrase "wide range of sedentary work" when he intended to use the phrase "full range of sedentary work" or (2) did not believe that plaintiff could perform the full range of sedentary work because of exertional or nonexertional impairments. In either event, the Court must remand for further proceedings for the ALJ to further explain his ruling or award benefits.[10] In particular, the ALJ should explain whether plaintiff is capable of performing a "full range" or "wide range" of sedentary work. Furthermore, if plaintiff is capable of performing only a wide range of sedentary work, the ALJ should explain what impairments limit plaintiff to less than a full range of sedentary work and whether plaintiff is nevertheless able to perform work available in the local and national economy. *See Trimiar v. Sullivan,* 966 F.2d 1326, 1333 (10th Cir.1992) (because claimant did not fit grid classification, proper determination of disability required expert testimony regarding number of jobs available in local or national economy); 20 C.F.R. Pt. 404, Subpart P, App. 2, § 201.00(h)(3) (inability to perform full range of sedentary work does not require finding of disabled; ALJ must assess factors such as type and extent of individual's limitations or restrictions and extent of erosion of occupational base); Soc. Sec. Ruling 96–9p, 1996 WL 374185, at *4 (ALJ cannot conclusively apply grids if claimant's exertional capacities are determined to be less than those required to do full range of sedentary work or individual has nonexer-

**10.** When the Court reverses the Commissioner's ruling, it can remand for further proceedings or direct an immediate award of benefits. *Talbot v. Heckler,* 814 F.2d 1456, 1465 n. 6 (10th Cir.1987). A remand for further proceedings is generally required unless it would serve no purpose. *Dollar v. Bowen,* 821 F.2d 530, 534 (10th Cir.1987). In this case, further proceedings are necessary to determine (1) whether the ALJ mistakenly used the phrase "wide range of sedentary work" when he intended to use the phrase "full range of sedentary work" and (2) if the ALJ intended to use the phrase "wide range of sedentary work," whether plaintiff can perform any work available in the national economy.

tional limitations which narrow range of sedentary work).

**IT IS THEREFORE ORDERED** that *Plaintiff's Social Security Brief* (Doc. # 15) filed October 7, 2003, which the Court construes as a motion for judgment, be and hereby is **SUSTAINED.**

**IT IS FURTHER ORDERED** that the Judgment of the Commissioner is **RE-VERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.